**David WEISS, Plaintiff–Appellant,**

v.

**JPMORGAN CHASE & COMPANY, Defendant–Appellee.**

No. 08–0801–cv.

United States Court of Appeals, Second Circuit.

June 5, 2009.

Joseph D. Garrison (Nina T. Pirrotti, on the brief), Garrison, Levin–Epstein, Chimes & Richardson, P.C., New Haven, C.T. (Piper Hoffman, Outen & Golden, LLP, New York, N.Y., on the brief), for Appellant.

John D. Giansello (Michael Delikat, on the brief), Orrick, Herrington & Sutcliff LLP, New York, N.Y., for Appellee.

Thomas W. Osborne (Melvin Radowitz, on the brief), AARP Foundation Litigation, Washington, D.C. (Stefano G. Moscato, Program Director, National Employment Lawyers Association, San Francisco, C.A., on the brief), for Amicus Counsel.

Present: ROSEMARY S. POOLER, PETER W. HALL, Circuit Judges and ROBERT W. SWEET,* District Judge.

## SUMMARY ORDER

David Weiss, a former employee of JPMorgan Chase & Company ("JPMorgan") appeals from a January 22, 2008 opinion and order of the district court granting summary judgment in favor of JPMorgan. *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402, 2008 WL 216619 (S.D.N.Y. Jan. 22, 2008). Weiss alleged that he was terminated by JPMorgan in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107(1)(a). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review a grant of summary judgment de novo and affirm only if the record, viewed in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of the non-moving party, reveals no genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 245 (2d Cir.2008).

The parties do not challenge the district court's conclusions that Weiss, who was fifty-six years old at the time of his termination, and was replaced by a forty-year-old member of his sales group, presented a prima facie case of age discrimination and that JPMorgan introduced evidence that it had legitimate non-discriminatory reasons for the decision to terminate Weiss. *See*

---

* The Honorable Robert W. Sweet, United States District Court for the Southern District of New York, sitting by designation.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At the final stage of the *McDonnell Douglas* analysis, the plaintiff's burden of proving that he was the victim of intentional discrimination merges with his burden of proving that the employer's reasons are pretextual. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Supreme Court has held that "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability," and it is error to "proceed[ ] from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Zimmermann v. Assoc. First Capital Corp.,* 251 F.3d 376, 382 (2d Cir.2001). "[A]n employee may satisfy the ultimate burden of proving pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1113 (2d Cir.1988) (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). The pretext inquiry may also involve "factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." *DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 171 (2d Cir. 1993). In holding that Weiss had failed to demonstrate a genuine issue as to whether JPMorgan's reasons for his termination were pretextual, the district court failed to construe the evidence in the light most favorable to Weiss and to draw all permissible inferences in Weiss's favor.

Weiss argues that the reasons given by JPMorgan for his termination are unworthy of credence. Weiss was terminated after his sales team complained about his leadership to Bryan Weadock, Weiss's supervisor, and Carlos Hernandez, Weadock's supervisor. Based on these complaints, JPMorgan claims that it reached the subjective determination that the team had lost confidence in Weiss. In employment discrimination cases, courts must give particular scrutiny to "subjective evaluation[s]," because (1) "any defendant can respond to a discrimination charge with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case" and (2) a discriminatory consideration such as age could play into the "formation of subjective impressions." *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 104–06 (2d Cir.2001) (alterations and quotation marks omitted).

As the district court observed, Weiss does not dispute that his sales team attributed their dissatisfaction with compensation at least in part to him. However, he presented evidence "that his employees' complaints were either misdirected or unfounded." *Weiss,* 2008 WL 216619, at \*8. For example, one of Weiss's former supervisors concluded that Weiss managed a difficult group of highly compensated salespeople very well and that Weiss had little control over the total amount of bonus compensation that JPMorgan allotted to his group. JPMorgan does not argue that any member of Weiss's group complained about the allocations of bonus amounts to individual salespeople, the one aspect of the compensation process completely within Weiss's control. Although the event which precipitated Weiss's dismissal was the defection of the group's top

salesperson, Shabbir Jasdanwala, for Lehman Brothers, a competitor firm, Weiss presented evidence that JPMorgan's refusal to match the two-year compensation guarantee offered by Lehman Brothers was the cause of Jasdanwala's defection. Despite their complaints, none of Weiss's other salespeople left due to concerns about compensation. The district court concluded that Weiss's arguments were "irrelevant . . . . because JPMorgan did not base its termination decision on his ineffectiveness per se, but rather on the basis of his employees' stated perception of his ineffectiveness." *Weiss*, 2008 WL 216619, at *9. But the evidence presented by Weiss goes to whether his supervisors could have credibly believed that Weiss was at fault for the complaints of his sales team, and whether Weiss's supervisors thought that they could resolve the problem by replacing Weiss. As Hernandez put it, "in our business everybody always believes that they don't get paid fairly because that's the . . . nature of investment banking."

A jury could also infer pretext from the fact that Weadock stated that one of the justifications for Weiss's termination was his failure to cover accounts. The district court concluded that "Weiss . . . does not contradict Weadock's account of Weadock's client coverage concerns." *Weiss*, 2008 WL 216619, at *10. But Weiss's point is that he disputes whether Weadock ever confronted him about this issue at all. JPMorgan does not argue that Weadock ever put Weiss on notice that covering accounts was a condition of his employment. Weiss presented evidence that he could have covered accounts if asked—he had previously covered accounts successfully until he was asked to stop in 2003, and began covering accounts again in the days before his termination. Although JPMorgan emphasized Weiss's failure to cover accounts in this litigation, and Wea-

dock had sent emails to certain individuals at JPMorgan regarding the account coverage issue prior to terminating Weiss, Weadock did not raise the issue with Hernandez when he asked for permission to terminate Weiss. Based on these facts, a jury could reasonably infer that Weiss's failure to cover accounts was a reason manufactured in advance by Weadock to justify Weiss's termination.

Under *Reeves*, a plaintiff may show pretext by demonstrating a prima facie case and undermining the employer's justifications for his termination. 530 U.S. at 147, 120 S.Ct. 2097. In this case, the evidence presented by Weiss calls into question the credibility of JPMorgan's main explanation for his termination, at least in part. We need not determine whether this alone would be sufficient for Weiss to carry his burden of demonstrating discriminatory motive, because Weiss also argues that his termination occurred under the following abrupt and unusual circumstances suggesting discrimination. *See Byrnie*, 243 F.3d at 102.

First, Weiss argues that the district court erred in failing to consider that his qualifications were superior to those of Anthony McCann, his younger successor. Weiss points out that in 2004, shortly before he was terminated, Weiss's team was ranked first against all its competitors in a survey by an independent service. At a sales conference, Weiss claims that the Vice Chairman of the Investment Bank stated to an audience, "For those of you who don't know Dave [Weiss], he's the best in the world at what he does." By contrast, JPMorgan does not dispute that McCann had no previous supervisory experience in the industry, and Weiss was more successful at sales during the nine years when he and McCann were both salespeople. Weadock, who had known McCann for only four months, failed to interview

McCann or even inquire about his qualifications before promoting him. Although JPMorgan argues that the problem was the sales group's declining morale under Weiss's leadership, neither Weadock nor Hernandez considered McCann's leadership skills prior to promoting him.

We agree with Weiss and amicus counsel that the case cited by the district court on this issue, *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir.1997), is not relevant to the question of pretext. An employer's invocation of the business judgment rule does not insulate its decisions from all scrutiny in a discrimination case. *See Dister,* 859 F.2d at 1116. Nor is a plaintiff required to demonstrate bad faith in the form of direct evidence of discriminatory animus; a plaintiff may prove discriminatory animus through circumstantial evidence. *Reeves,* 530 U.S. at 141, 120 S.Ct. 2097. A disparity in qualifications may point to discrimination. *See Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 456–57, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006). Here, although JPMorgan presented non-discriminatory justifications for terminating Weiss, the stark disparity between the qualifications of the fifty-six-year-old Weiss and the qualifications of the forty-year-old McCann calls into question whether JPMorgan's rationales were pretextual.

Second, Weiss contends that pretext can be inferred from JPMorgan's shifting explanations for his termination. Inconsistent or even post-hoc explanations for a termination decision may suggest discriminatory motive. *See Carlton v. Mystic Transp. Inc.,* 202 F.3d 129, 137 (2d Cir. 2000); *EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir.1994). JPMorgan offered various vaguely formulated and technically inaccurate explanations for Weiss's termination. The district court concluded that it was "unclear why JPMorgan did not inform Weiss at the time of his firing of the reasons it now offers," but nonetheless found JPMorgan's new reasons supported by the record. *Weiss,* 2008 WL 216619, at *11. However, a jury could infer pretext from JPMorgan's failures to present these reasons to Weiss initially, especially in light of a statement by a JPMorgan human resources employee that JPMorgan "always advocate[s] giving true reasons" to employees who are fired.

The district court concluded that "[n]one of the explanations offered by JPMorgan, ..., is inconsistent with any other. Rather, the variety of explanations offered reflects the polyphony of multiple decisionmakers and the assorted complaints lodged against Weiss." *Weiss,* 2008 WL 216619, at *11. But Weiss has presented facts from which a reasonable jury could conclude that there was only one primary decisionmaker, Weadock, and Weadock's explanations for Weiss's termination shifted. Weadock initially told Weiss that the group needed "change" and that his job would be "eliminated." But, viewing the record in the light most favorable to Weiss, his job was not "eliminated"—he was replaced by McCann. McCann was promoted to a job with Weiss's former title, management role, subordinates, and reporting structure. In accepting JPMorgan's argument that Weiss's job was not "eliminated" because his "manager" position was replaced by a "producer manager" position, the district court failed to view the record in the light most favorable to Weiss. Weiss has presented evidence that, as Weadock knew, Weiss had begun covering accounts and was therefore a "producer manager" at the time of his termination. The district court also concluded that JPMorgan had benign motives for characterizing Weiss's termination as a job elimination, specifically, to allow Weiss to qualify for a severance agreement. But Weiss argues that, to take advantage of

the severance benefits, he would have had to release all claims against JPMorgan. Drawing all inferences in Weiss's favor, we cannot say that a rational factfinder must find that JPMorgan's motives for characterizing Weiss's termination as a "job elimination" were benign.

Third, Weiss argues that JPMorgan contravened its normal termination procedures by failing to provide him with the opportunity to correct the alleged problems with his job performance and failing to consult his past supervisors and other coworkers prior to making the termination decision. Where an employer's "deviat[ion] from its normal decisionmaking procedures" resulted in the challenged employment decision, an inference of pretext may arise. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313–14 (2d Cir.1997). At his deposition, Hernandez acknowledged that JPMorgan's general practice is to attempt to give an employee the opportunity to improve prior to termination. With respect to JPMorgan's failure to consult Weiss's past supervisors and other coworkers, the district court recognized that "[p]erhaps it would have made more sense for a decision as to Weiss's future at JPMorgan to be made by those who knew his work over a longer period of time than did Hernandez, Weadock, and [Penny] Van Niel [of Human Resources], all of whom were relatively new to high yield sales." *Weiss*, 2008 WL 216619, at *14. However, the district court declined to conclude that this was evidence of pretext, because Weadock and Hernandez stated that urgent circumstances justified JPMorgan's deviations from its customary procedure. Weiss has presented evidence to support the claim that, by the time he was terminated, any crisis regarding defections from his sales group had passed. Whether Weiss's superiors were persuaded by a sense of business urgency or age discrimination to contravene normal procedures to terminate Weiss is a question for the jury.

Fourth, Weiss argues that the district court failed to consider evidence that when Weadock and Weiss were direct peers, Weadock had allowed the bonus pool for his sales group to decrease by a larger percentage than Weiss's bonus pool, and more of Weadock's employees had threatened to defect and required compensation guarantees. Weadock, who is younger than Weiss, was promoted, not terminated. The district court discounted this evidence because "the gravamen of the complaints made against Weiss concerned his leadership with regard to compensation, bonus issues, and the HY sales group's stature within JPMorgan. He has offered no evidence to suggest that similar complaints were made against Weadock, and has therefore not demonstrated that Weadock was 'similarly situated.'" *Weiss*, 2008 WL 216619, at *14. This observation goes to the weight of the evidence, which can properly be assessed by a jury in determining the extent to which Weadock's circumstances are probative of age discrimination against Weiss.

Finally, Weiss points to a comment in an email by a human resources representative, regarding a conversation with Weadock, stating that Weiss was "not the positive energized leader the HY Sales side needs at this time and we need to make room for talented people below." Weiss argues that JPMorgan has presented no evidence that he was not "energized"— indeed, one colleague stated that he has a "tireless work ethic." Although we agree with the district court that this remark is "oblique," its probative value is limited, and it is a classic stray remark, *Weiss*, 2008 WL 216619, at *12 n. 7 (quoting *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir.2007)), considering the comment in the context of the other

evidence of pretext presented by Weiss, a jury could conclude that the term "energized" was a euphemism for youthful, *cf. Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456–57, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006).

To affirm the dismissal of Weiss's complaint on summary judgment, this Court would necessarily have to accept as true Weadock's and Hernandez's subjective assessment that the team was suffering from a leadership crisis, which Weiss controverts by pointing to evidence that no member of his sales group departed after Jasdanwala (who was offered a better compensation guarantee by Lehman Brothers), that Weadock's team required more compensation guarantees than Weiss's, that Weadock provided shifting explanations for Weiss's termination, and that Weiss had been so successful that he was described by the bank's Vice Chairman as "the best in the world." Considering these circumstances in light of Weiss's prima facie case, to wit, that he was terminated at age fifty six, in favor of an employee sixteen years his junior, we cannot confidently say that no rational factfinder could determine that JPMorgan's reasons for terminating Weiss were pretextual. Accordingly, the judgment of the district court hereby is REVERSED and REMANDED for further proceedings consistent with this order.