(April 24, 2012)

■ AYODELE SANDIFORD, Appellant-Respondent, v CITY OF NEW YORK DEPARTMENT OF EDUCATION et al., Respondents-Appellants, et al., Defendants. [943 NYS2d 48]—

Order, Supreme Court, New York County (Cynthia S. Kern, J.), entered on or about February 18, 2010, which, insofar as appealed from as limited by the briefs, granted defendants' motion for summary judgment insofar as it sought dismissal of plaintiff's retaliation claim under the New York City and the New York State Human Rights Law and denied the motion insofar as it sought dismissal of her discrimination claims, modified, on the law, to deny the motion as to plaintiff's retaliation claim, and otherwise affirmed, without costs.

In this action alleging discrimination based on sexual orientation, plaintiff is a lesbian and has been employed as a school aide by defendant Department of Education (DOE) since May 2001. During the 2004/2005 school year, plaintiff was assigned to P.S. 181, in Brooklyn, where defendant Coleman was principal. According to plaintiff, Coleman repeatedly made derogatory remarks regarding gays and lesbians in front of plaintiff, the students and the teachers. Plaintiff stated that Coleman had commented that "two men should not be behind closed doors," "whatever two men is [sic] doing behind closed door[s], God would judge them for himself." Plaintiff also stated that Coleman had said that "his church can change people like us for the better" and, while acting out an obscene walk, "this is how faggots walk." On another occasion, Coleman allegedly admonished students for using the word "lesbian." Plaintiff claimed that she complained about certain staff members who had teased her, taunted her with notes in her locker and made lewd comments to her.

In March 2005, plaintiff was advised that she was being suspended without pay pending an investigation by defendant DOE's Office of Special Investigation (OSI) regarding an allegation of sexual misconduct pertaining to an incident which occurred on or about February 11, 2005 involving two coworkers at P.S. 181, a college student, age 18, and a DOE student, age 16. Plaintiff allegedly asked the DOE student to "hook her up" with the college student. When the DOE student refused and advised plaintiff to "leave it alone," plaintiff allegedly persisted and contacted the college student directly. Her alleged attempts to establish a personal relationship were purportedly rejected. Plaintiff denies the incident occurred.

Thereafter, plaintiff allegedly complained about Coleman's conduct to various DOE offices to no avail. In late June 2005, plaintiff again met with Coleman and was allegedly "berated, belittled and reprimanded" for complaining about his treatment

of her. Plaintiff was then advised that, an investigation by OSI had substantiated the allegations of misconduct and recommended termination of her employment, and that Coleman had decided to terminate plaintiff's employment.

Plaintiff filed a grievance with the DOE challenging her termination and was reinstated with back pay, less two weeks, and a letter placed in her file warning her not to engage in inappropriate conduct or conversation with any DOE student. Thereafter, plaintiff commenced the instant action alleging claims for discrimination and retaliation under the New York State and New York City Human Rights Laws.

Defendants' argument that the claims are precluded by the doctrine of collateral estoppel based on implicit findings by the DOE is improperly raised for the first time on appeal (*see Gavin v Catron*, 35 AD3d 354 [2006]). In any event, the argument is without merit. The record shows that plaintiff did not have a full and fair opportunity to litigate her claims of discrimination in the grievance process. Indeed, her testimony suggests that she had little involvement in the proceedings. Thus, the record does not allow us to conclude that the facts asserted were "adequately tested, and that the issue was fully aired" (*Jeffreys v Griffin*, 1 NY3d 34, 41 [2003] [internal quotation marks omitted]). Here, the record merely reflects plaintiff's request for a review by the Grievance Panel, and the panel's subsequent decision. Moreover, plaintiff did not have an opportunity to appeal the grievance decision, as it was the Union's decision whether to proceed further (*cf. Hickey v Hempstead Union Free School Dist.*, 36 AD3d 760 [2007]).

Plaintiff's testimony regarding Coleman's repeated derogatory remarks regarding gays and lesbians was sufficient to raise a question of fact as to plaintiff's claim alleging unlawful discriminatory practices under the New York City Human Rights Law (Administrative Code of City of NY §§ 8-101, 8-107 [13] [a], [b]), the uniquely broad and remedial provisions of which are liberally construed to provide expansive protections not afforded by their state and federal counterparts (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 66 [2009], *lv denied* 13 NY3d 702 [2009]; Administrative Code § 8-130). This Court has made clear that where a plaintiff "responds with some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete, a host of determinations properly made only by a jury come into play, *and thus such evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied*" (*Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 45 [2011] [emphasis added]).

Moreover, in light of plaintiff's testimony regarding Coleman's comments and conduct, the record did not conclusively establish that defendants would have made the same decision to terminate plaintiff's employment had they not considered plaintiff's sexual orientation. Thus, there being triable issues of fact, summary judgment was precluded insofar as the complaint alleged unlawful discrimination under the New York State Human Rights Law (Executive Law § 296 [1] [a]; *see McKennon v Nashville Banner Publishing Co.*, 513 US 352, 360 [1995]; *Chertkova v Connecticut Gen. Life Ins. Co.*, 92 F3d 81, 91 [2d Cir 1996]).

Regarding plaintiff's claim of retaliation, to the extent the claim is based upon the New York City Human Rights Law (Administrative Code § 8-107 [7]), summary judgment is precluded by triable issues of fact as to whether, within the context of this matter and the workplace realities as demonstrated by the record, plaintiff's termination from employment would be reasonably likely to deter other persons in defendants' employ from engaging in protected activity (*see Williams*, 61 AD3d at 70-71).

To the extent the claim is based upon the New York State Human Rights Law (Executive Law § 296 [1] [e]), summary judgment is precluded by triable issues of fact as to whether, in response to plaintiff's prima facie showing that her termination was the direct result of retaliatory animus, defendants offered a pretextual explanation (*see Sukram v Anjost Corp.*, 72 AD3d 491 [2010]; *Pace v Ogden Servs. Corp.*, 257 AD2d 101, 104-105 [1999]; *Gordon v New York City Bd. of Educ.*, 232 F3d 111, 117 [2d Cir 2000]).

We have considered the parties' remaining arguments and find them unavailing. Concur—Tom, J.P., Saxe, Moskowitz and Manzanet-Daniels, JJ.

Saxe and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: I must respectfully dissent. The plaintiff school aide did not challenge a grievance decision which concluded that she had engaged in inappropriate conduct with a 16-year-old female student, yet now argues that her termination was based on her sexual orientation and so was discriminatory and retaliatory. In my opinion, the plaintiff's attempt to inoculate herself against the consequences of her inappropriate conduct must be rejected: as set forth more fully below, well-established precedent upholds termination of educators for sexually inappropriate behavior towards a student—regardless of their sexual orientation.

In focusing on the principal's alleged derogatory remarks, the majority gives no weight to the fact that the misconduct charges against the plaintiff were *investigated and substantiated* by the

New York City Department of Education (hereinafter referred to as DOE), and that the DOE then recommended that the principal terminate plaintiff. Regardless of any remarks made by the principal, it was the plaintiff's burden to "respond[ ] with some evidence that *at least one of the reasons* proffered by defendant is false, misleading or incomplete," and the plaintiff entirely failed to do so. The substantiated charges were affirmed by the DOE at the conclusion of her appeal, and she failed to challenge them.

The record reflects the following: The plaintiff, a lesbian, is an employee of the DOE working as a school aide in a Brooklyn public school. The plaintiff also worked at an after-school program at the public school operated by a private not-for-profit corporation.

On February 10, 2005, a 16-year-old student employee and an 18-year-old coworker complained to the defendant principal of the public school where the plaintiff worked that plaintiff had engaged in inappropriate behavior. In written statements, they explained that the plaintiff called the student on a classroom telephone and asked the student to "hook her up" with the coworker. Although the student told her the coworker was not gay, the plaintiff "didn't want to get off the phone." The student explained to the coworker why the plaintiff was calling, but the coworker refused to speak with the plaintiff. When the plaintiff called back, the coworker answered the phone and the plaintiff asked the coworker for a date.

The principal reported the allegations to the DOE on February 11, 2005, and on March 16, 2005, suspended the plaintiff without pay pending the outcome of an investigation by the DOE's Office of Special Investigation (hereinafter referred to as OSI). The plaintiff was advised that she was not permitted to return to the building until the investigation was completed, and that she could not continue her job with the after-school program. At a meeting with her union representative and the OSI investigator on March 30, 2005, the plaintiff complained that the principal's treatment of her was discriminatory. The plaintiff also complained to a DOE representative at the Chancellor's office on April 20, 2005.

The OSI investigation included interviews with the student, the coworker, the plaintiff with her union representative, and another 16-year-old student who also worked in the after-school program. The OSI substantiated the allegations and the Chancellor's office prepared a report dated June 20, 2005, concluding that: "[The plaintiff] used her position as an employee of the New York City Department of Education in an at-

tempt to engage in a personal relationship. [The plaintiff] utilized a sixteen year old Department of Education student to assist her in doing so. [The plaintiff] engaged a sixteen year old Department of Education Student in inappropriate conversation." The report further recommended that the principal review the report, that the plaintiff's employment be terminated, and that her name be placed on the DOE's "Invalid/Inquiry List." The principal met with the plaintiff on June 22, 2005, and gave her a letter stating that the OSI had substantiated the allegations against her and that after reviewing the findings, he had decided to terminate her employment.

On December 13, 2005, the plaintiff appealed her termination, and on September 15, 2006, the Chancellor issued a grievance decision. The decision begins by describing the plaintiff's position, including her denial that she asked the coworker out or that she asked the student to speak to the coworker on her behalf. The decision then presents the DOE's position, including details of the student and coworker's complaints to the principal, his report of the incident, and the OSI interviews. The decision states that the OSI found "that the grievant used a sixteen year old student to assist her in engaging in a personal relationship with the college student, which included inappropriate conversation with the sixteen year old student," and that "[i]n view of the investigator's findings and conclusions, the principal discharged the grievant." The decision then concludes that "the following [sic] happened" and that "[a]lthough inappropriate, the grievant's conduct in this matter did not warrant discharge."

The DOE reinstated the plaintiff with all but two weeks back pay and placed a warning letter in her file. The grievance decision was not appealed, and the plaintiff commenced the instant action on March 28, 2006.

On May 23, 2006, the plaintiff filed an amended complaint against the DOE, the principal, the corporation that operates the after-school program, and its director.[1] The complaint alleges that the plaintiff was defamed and that pursuant to the Administrative Code of the City of New York § 8-107 et seq. (NYC HRL), the Executive Law § 296 et seq. (NYS HRL), and the New York State Constitution, her employment was unlawfully terminated because of her sexual orientation and in retaliation for complaining about the principal's conduct. The plaintiff claims $2 million in damages.

---

1. The causes of action against the corporation that operates the after-school program and its director were dismissed on May 29, 2008 and they are not parties to this appeal.

At deposition, the student testified that the plaintiff telephoned her in a classroom and told her that although the plaintiff wanted to take her out, the student was "too young." Plaintiff then asked the student to "hook [the plaintiff] up" with the coworker. The student told the plaintiff that the coworker was not gay and that the plaintiff should "leave it alone." According to the student, the plaintiff said she "[didn't] care" and still wanted to take out the coworker and wouldn't "take no for an answer." The student attempted to pass the telephone to the coworker, who refused to speak with the plaintiff. Although she felt "uncomfortable," the student related the plaintiff's intentions to the coworker.

In her deposition testimony, the coworker stated that the plaintiff then called back to speak with her directly, told the coworker she was "very attractive," and asked her "did [the student] tell you." The coworker told the plaintiff "yes" but that she was not a lesbian. The coworker turned down the plaintiff's proposition to "go out one night" and reported the incident to the principal.

The plaintiff testified at deposition that the principal had made derogatory remarks about homosexuals. She described an incident where the principal imitated what he characterized as a "faggot's" walk, and stated that he did this several times in front of different people and looked at her. She also claimed that he commented to her and her nephew and niece that "two men should not be behind closed doors," "whatever two men [sic] is doing behind closed door, God would judge them for himself," and that "his church can change [homosexuals] for the better." On another occasion, the principal allegedly admonished a student for calling another student a "lesbian."

The plaintiff further testified that when the principal gave her the termination letter, he told her that she "caused this upon [her]self" for complaining to the Chancellor's office and Regents about him. The plaintiff also denied that she did anything inappropriate with the student or the coworker.

In his deposition, the principal explained that pursuant to the Chancellor's guidelines, he reported the incident to the DOE on February 11, 2005. He further explained that the plaintiff's supervisor told him that the plaintiff told her that she knew her actions were wrong, but that she "could not help [her]self." The principal confirmed that he is a minister in a Pentecostal church. When questioned about his views on homosexuality, the principal stated that his church's view is that "it is not permissible under the ordinances of what we believe the Bible speaks of." He further stated that even were he not a church member,

homosexuality is against his "moral fabric." The principal conceded that the plaintiff's complaints to the Chancellor's office may have been "mentioned [to him] in some conversation," but denied saying anything to the plaintiff about her complaints when he terminated her.

By notice of motion dated April 27, 2009, the DOE and the principal moved for summary judgment dismissing all causes of action against them. The defendants argued, inter alia, that the plaintiff had been terminated for her inappropriate conduct, a legitimate, nondiscriminatory reason, and therefore any purported discrimination was not causally related to her termination. In opposition, the plaintiff asserted that she was treated disparately, and denied engaging the student in a conversation about the coworker or having any inappropriate conversations with either the student or coworker.

By decision and order dated February 9, 2010, the court granted the defendants' motion to the extent of dismissing the claims for retaliation and libel, but denied summary judgment as to the plaintiff's discrimination claims. The plaintiff appeals from the dismissal of her retaliation cause of action and the defendants cross-appeal denial of their summary judgment motion to dismiss the plaintiff's discrimination cause of action.

For the reasons set forth below, I would modify the decision of the trial court to dismiss the plaintiff's discrimination claim and otherwise affirm. As a threshold matter, the plaintiff's claims should be viewed in the context of overriding public policy that seeks to protect children from predatory teachers regardless of whether the teacher is heterosexual or homosexual. (*See e.g. Matter of Douglas v New York City Bd./Dept. of Educ.*, 87 AD3d 856, 857 [1st Dept 2011] [termination was appropriate where "(p)etitioner's unacceptable behavior (of making sexual comments to students) compromised his ability to function as a teacher"]; *Lackow v Department of Educ. (or "Board") of City of N.Y.*, 51 AD3d 563 [1st Dept 2008] [the penalty of termination was not disproportionate to the defendant's offense of making inappropriate remarks to students]; *Matter of Katz v Ambach*, 99 AD2d 897, 897 [3d Dept 1984] [terminating teacher for making sexual comments and putting his arm around students is an appropriate penalty "in view of the potentially harmful effect upon the young minds entrusted to a teacher's care"]; *City School Dist. of City of N.Y. v Hershkowitz*, 7 Misc 3d 1012[A], 2005 NY Slip Op 50569[U] [Sup Ct, NY County 2005] [respondent should have been terminated rather than suspended for one year for sending sexually explicit e-mails].) This policy was recently reaffirmed in the Court of Appeals decision in *City*

*School Dist. of City of N.Y. v McGraham* (17 NY3d 917 [2011]). In that decision, the Court upheld the 90-day suspension of a teacher for engaging in an "inappropriate communication" with a 15-year-old student in her class (*id.* at 919). The Court acknowledged that the state has a broad public policy of protecting children.

In any event, the plaintiff fails to establish a prima facie claim of discrimination. The standards relating to burden and order of proof in employment discrimination cases brought under the State HRL are the same as those established by the United States Supreme Court in *McDonnell Douglas Corp. v Green* (411 US 792, 802-804 [1973]; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 n 3 [2004]). To establish a prima facie claim of discrimination, a plaintiff must initially show: (1) that the employee is a member of protected class; (2) that she was discharged; (3) that she was qualified for the position; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. (*McDonnell Douglas Corp.*, 411 US at 802.)

Further, discrimination cases may be characterized as "pretext" cases or "mixed-motive" cases. (*See Tyler v Bethlehem Steel Corp.*, 958 F2d 1176, 1180 [2d Cir 1992], *cert denied* 506 US 826 [1992].) In "pretext" cases, the burden-shifting framework articulated in *McDonnell Douglas Corp.* (411 US at 802) is applied. Upon the plaintiff's prima facie showing of discriminatory animus, the burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for the adverse employment action. (*Brennan v Metropolitan Opera Assn.*, 284 AD2d 66 [1st Dept 2001].) If the defendant provides a legitimate nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence demonstrating that it is more likely than not that the defendants' stated reasons were false and thus a pretext for another nonlegitimate reason. (*McDonnell Douglas Corp.*, 411 US at 804; *Weinstock v Columbia Univ.*, 224 F3d 33, 42 [2d Cir 2000], *cert denied* 540 US 811 [2003].)

In this case, the plaintiff claims that the principal's alleged disparaging remarks about homosexuality raise an inference of discrimination. In response, the principal relies on the OSI report substantiating the plaintiff's inappropriate conduct towards a female student and coworker. The plaintiff contends, as she did before the motion court, that she did not engage in any inappropriate conduct and that the principal's anti-gay animus is sufficient to raise a triable issue of fact that his reason for terminating her is false.

The principal argues that the doctrine of collateral estoppel

precludes the plaintiff from relitigating the issue of whether she engaged in "inappropriate" conduct. I agree. The doctrine of collateral estoppel is applicable where the issue in the current litigation is identical to a material issue decided in a prior proceeding, and the issue was fully and fairly litigated. (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500-501 [1984].) Further, it is well settled that a final determination by a quasi-judicial administrative agency may be accorded preclusive effect. (*Ryan*, 62 NY2d at 499.) This is particularly true when the party to be precluded solicited resolution of the issue by that agency, and fully participated with the expectation that the parties are bound by the decision. (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271 [1988], *cert denied* 488 US 1005 [1989].)

In its rejection of the principal's collateral estoppel argument, the majority contends that the plaintiff did not have a full and fair opportunity to litigate her discrimination claim. This entirely misconstrues the issue that was determined in the grievance process and which the plaintiff is barred from relitigating. The grievance decision, crediting the OSI report, plainly finds that the plaintiff *engaged in "inappropriate" conduct*. The record is devoid of any evidence indicating that she was deprived of an opportunity to defend herself against *the charge of inappropriate conduct with a minor student*. Furthermore, the grievance process was initiated by the plaintiff, who was represented by her union. Whether she had the right under her collective bargaining agreement or not, it is undisputed that the plaintiff did not request that the union appeal on her behalf or otherwise challenge the findings in the decision.

As such, the plaintiff cannot argue that the principal's reason for terminating her, her inappropriate conduct with a 16-year-old student, is false. Therefore, under a "pretext" analysis, her discrimination claim must fail. (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295 [2004], *supra* [plaintiff's prima facie case, without any evidence that the defendant's justification is false, does not permit the trier of fact to conclude that the employer unlawfully discriminated].)[2]

The majority's reliance on this Court's decision in *Bennett v*

2. The plaintiff's contention that the doctrine of collateral estoppel cannot be raised for the first time on appeal is unavailing. Whether a collateral estoppel argument may be raised on appeal depends upon whether the argument was apparent on the face of the record and whether the record on appeal is sufficient. (*See Chateau D'If Corp. v City of New York*, 219 AD2d 205, 209 [1st Dept 1996], *lv denied* 88 NY2d 811 [1996]; *Gerdowsky v Crain's N.Y. Bus.*, 188 AD2d 93, 97 [1st Dept 1993]; *see also Szigyarto v Szigyarto*, 64 NY2d 275, 280 [1985].) Because the grievance decision is in the record and it is undisputedthat it was not appealed, there are no evidentiary issues which would prevent the

*Health Mgt. Sys.* (92 AD3d 29 [2011]) is misplaced. Indeed, *Bennett* supports dismissal of her claims. In *Bennett,* the plaintiff claimed that his termination was "motivated by hostility to his age and race." (92 AD3d at 33.) In opposition, the defendant offered credible evidence of the plaintiff's poor attendance, inability to master his job, and sleeping and drinking on the job. The defendant was granted summary judgment because the plaintiff failed to show that the evidence was false, misleading, or incomplete. Similarly, in this case the plaintiff cannot show that the charge of inappropriate conduct, which was the *only* reason proffered by the principal for terminating her, is false.

Even if the plaintiff were permitted to relitigate the issue of whether she engaged in inappropriate conduct, in my opinion it would not help her. While the majority makes much of the principal's purported anti-gay religious views and conduct, the record reflects that the principal followed DOE policy in reporting the allegations. More significantly, at the time the principal made his decision to terminate the plaintiff, he was in receipt of a DOE report that substantiated her misconduct and recommended her termination. In my view, it is clear that this documentation induced the principal to terminate the plaintiff, and that he would have done so no matter what her sexual orientation. For this reason, her claim also fails under a "mixed-motive" analysis.

In order to defeat a motion for summary judgment under a "mixed-motive" analysis, the plaintiff must raise a triable issue of fact that unlawful bias was the "motivating" or "substantial" factor for termination. (*De la Cruz v New York City Human Resources Admin. Dept. of Social Servs.*, 82 F3d 16, 23 [2d Cir 1996].) The initial burden on the plaintiff under the mixed-motive analysis is greater than in the pretext analysis. (*Id.*) The plaintiff may meet her initial burden by showing "evidence of statements or actions by decisionmakers that may be viewed as *directly reflecting* the alleged discriminatory attitude." (*Raskin v Wyatt Co.*, 125 F3d 55, 60-61 [2d Cir 1997] [internal quotation marks omitted]; *see Price Waterhouse v Hopkins,* 490 US 228, 258 [1989] [plurality opinion].) Once the plaintiff offers such evidence, the burden shifts to the defendant to demonstrate that she would have been terminated even in the absence of alleged discriminatory bias. (*De la Cruz,* 82 F3d at 23; *Price Waterhouse,* 490 US at 252, 109 S Ct at 1792 ["the employer . . . must show that its legitimate reason, standing alone, would have induced it

---

Court from considering the applicability of collateral estoppel at this time. The cases cited by the plaintiff that hold otherwise are either factually distinguishable or there is no reasoning supporting the decision.

to make the same decision"]; *Sista v CDC Ixis N. Am., Inc.*, 445 F3d 161, 173 [2d Cir 2006].)

Verbal comments serve as evidence of discriminatory motivation when a nexus exists between the defendant's allegedly discriminatory remarks and the decision to terminate the plaintiff. (*Schreiber v Worldco, LLC*, 324 F Supp 2d 512 [SD NY 2004].) In determining whether a comment is a probative of discrimination, the following factors are considered: (1) whether the comment was made by a decisionmaker, a supervisor, or a low-level coworker; (2) whether the remark was made close in time to the adverse employment decision; (3) whether a reasonable juror could view the remark as discriminatory; and (4) the context of the remark—that is, whether the remark related to the decision making process. (*Id.* at 519.)

Here, even if the principal could be viewed as a "decisionmaker" demonstrating an anti-gay animus, his remarks do not relate in any way to his decision to terminate the plaintiff. (*See e.g. Equal Empl. Opportunity Commn. v National Broadcasting Co., Inc.*, 753 F Supp 452 [SD NY 1990], *affd* 940 F2d 648 [1991] [plaintiff presented no evidence to connect the alleged stereotyped remarks to the decision-making process]; *cf. St. Louis v New York City Health & Hosp. Corp.*, 682 F Supp 2d 216, 230 [ED NY 2010] [supervisor's repeated statements that she "did not like working with females" and that plaintiff was "out of here" suggests a relationship between gender bias and the decision to terminate]; *Bookman v Merrill Lynch*, 2009 WL 1360673, *14, 2009 US Dist LEXIS 40766, *37 [SD NY 2009] [employer's comment that "the future of the office lay with young (w)hite brokers" related directly to the plaintiff's prospects at the company].) Here, there is no indication that the principal's explanation of his religious views and those of his church had anything to do with the plaintiff's termination. Similarly, his parody of a walk bears no relation to the plaintiff's employment. There is also no indication that the comments were close in time to the plaintiff's termination.

The plaintiff argues that under the "broad and remedial provisions" of the NYC HRL, evidence of the principal's anti-gay beliefs and her testimony describing his behavior meets her initial burden. However, even if she does meet her burden, I would find that the substantiation of her misconduct in the OSI report and the recommendation of the Chancellor's office to terminate the plaintiff, standing alone, would have induced the principal to make the same decision. (*See e.g. St. Louis v New York City Health & Hosp. Corp.*, 682 F Supp 2d at 231-232 [defendants met their burden by producing negative performance

evaluations]; *Cramer v Pyzowski*, 2007 WL 1541393, 2007 US Dist LEXIS 38375 [ED NY 2007] [defendants' detailed record of plaintiff's performance deficiencies met their burden]; *Bellom v Neiman Marcus Group, Inc.*, 975 F Supp 527 [SD NY 1997] [defendant produced evidence that the plaintiff failed to meet sales quotas for three consecutive months].)

In light of the sexual nature of the allegations, the defendant principal's decision to follow the Chancellor's recommendation was not unwarranted. (*See* NY City Dept of Educ, Chancellor's Reg A-830, Attachment No. 1, at 2 [prohibiting sexual harassment by teachers toward students].) As the United States Supreme Court has observed, judicial review of a school administrator's action is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." (*Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 US 176, 206 [1982].)

With regard to the plaintiff's retaliation claim, I agree with the motion court that the plaintiff fails to raise a triable issue of fact as to causation. In order to make out a prima facie case of retaliation under the City HRL, the plaintiff must show that (1) she is engaged in a "protected activity"; (2) the protected activity was known to defendant; (3) defendant took an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. (*See Forrest*, 3 NY3d at 312-313.) If plaintiff meets this initial burden, the burden shifts to the defendant to show that it had legitimate, nonretaliatory reasons for the adverse employment action. (*See Williams v City of New York*, 38 AD3d 238 [1st Dept 2007], *lv denied* 9 NY3d 809 [2007].) Upon defendant's proffer of a legitimate reason, the plaintiff must then show that the reason provided is pretextual. (*See id.*) In this case, the plaintiff engaged in protected activity when she complained to the OSI investigator and the Chancellor's office, and the principal conceded in deposition that he knew of her complaints. She points to the temporal proximity of her complaints to her termination and the principal's comments at the time of her termination to meet her initial burden and to show pretext.

The plaintiff asserts that her termination took place three months after her complaints to the OSI investigator on March 30 and Chancellor's office on April 20. However, the principal reported her misconduct on February 11 and suspended her on March 11, prior to her complaints. Causation cannot be established where the complaints are made after the adverse job

action began. (*Slattery v Swiss Reins. Am. Corp.*, 248 F3d 87, 94-95 [2d Cir 2001], *cert denied* 534 US 951 [2001]; *see e.g. Hernandez v Bankers Trust Co.*, 5 AD3d 146 [1st Dept 2004] [no causation where the complaint was made after plaintiff was notified that his use of a racially offensive password was a terminable offense].) Even considering her termination in June as the beginning of the adverse employment action, the plaintiff's claim nevertheless fails. As with her discrimination claim, she does not raise a triable issue of fact that the reasons for her termination were false and or that the principal would not have made the same decision regardless of her complaints. [**Prior Case History: 26 Misc 3d 1223(A), 2010 NY Slip Op 50240(U).**]