(May 5, 2015)

■ Lyn Rollins, Respondent, v Fencers Club, Inc. et al., Appellants. [8 NYS3d 202]—

Order, Supreme Court, New York County (Debra A. James, J.), entered August 15, 2013, which denied defendants' motion for summary judgment dismissing the complaint alleging age-based discrimination in violation of the New York City Human Rights Law, affirmed, without costs.

It is essentially undisputed that plaintiff has made out the first three elements of a prima facie case of discrimination by showing that, aged 58 at the time of her hiring, she was a member of a protected class based on her age, was qualified for the position of executive director of defendant Club, and was terminated and thereby subjected to a disadvantageous employment action (*see Askin v Department of Educ. of the City of N.Y.*, 110 AD3d 621, 622 [1st Dept 2013]). Contrary to our dissenting colleague, we conclude that the fourth element of a prima facie case of discrimination, namely, that plaintiff was disadvantaged under circumstances giving rise to an inference of discrimination, is sufficiently made out to warrant a trial.

Plaintiff testified that Elizabeth Cross, the Club board member who succeeded plaintiff as executive director, "very frequently" made references to plaintiff's age, including by saying, "Are you sure you're up for this? You know you're at that age where you . . . need more rest. You look tired," and asking whether plaintiff was "up for" meetings that "might be too much" for her and would "tire [her] out." Notwithstanding the dissent's dismissive characterization of these statements as "stray remarks" and, more incredibly, as the concern of a solic-

itous employer, as if they had no discriminatory import or implication, we find that when plaintiff's testimony is credited for purposes of this motion, these remarks directly reflect age-based discriminatory bias on Cross's part (*see Weiss v JPMorgan Chase & Co.*, 332 Fed Appx 659, 665 [2d Cir 2009]), and raise an inference of age-related bias sufficient to make out plaintiff's prima facie case of employment discrimination (*see Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 35 [1st Dept 2011], *lv denied* 18 NY3d 811 [2012]). In concluding that no inference of discriminatory motive can be drawn from this evidence, the dissent fails to abide by the precept that "all of the evidence must be viewed in the light most favorable to the party opposing the motion, and all reasonable inferences must be resolved in that party's favor" (*Udoh v Inwood Gardens, Inc.*, 70 AD3d 563, 565 [1st Dept 2010]). In particular, in observing that there is no direct evidence that Cross communicated to the board her views regarding plaintiff's age-related unfitness for the job, the dissent fails to recognize that given her position as executive director, it is fair to infer that Cross would have made such communications in the normal course of carrying out her responsibilities.

Under these circumstances, the fact that several of the persons involved in the decision to fire plaintiff were close to her in age, and thereby in the same protected class, does not vitiate the inference of discriminatory animus raised by Cross's claimed remarks (*see O'Connor v Consolidated Coin Caterers Corp.*, 517 US 308, 312 [1996]). In particular, Elizabeth Cross's age of 53 does not eliminate the import or weight of her remarks; indeed, she was not only implying that plaintiff, at 59, almost 60, was infirm, but was also implicitly suggesting that the board should view Cross herself, at 53, as a member of a younger age group than that in which she placed plaintiff. Nor is the discriminatory inference negated because plaintiff was hired at the age of 58. When plaintiff was hired, Cross was not a part of the decision-making process; however, Cross was allegedly a prime mover in the board's decision to fire plaintiff, and her discriminatory impulse may be attributable to the board.

In response to plaintiff's showing, defendants contend that they terminated her because of her poor performance, as reflected in Cross's findings in a management study she submitted to the Club's executive committee on November 7, 2008. In particular, defendants contend that, among other things, plaintiff was rude to members, failed to boost membership levels, was inefficient and unnecessarily raised Club

operating expenses. Defendants' submissions shift the burden back to plaintiff to prove that the proffered reasons were merely a pretext for discrimination (*see Bennett*, 92 AD3d at 36). However, notwithstanding the dissent's implication, defendants' assertions are not established facts, they are simply allegations that are disputed by plaintiff.

To show that the reasons offered by the Club for her firing were pretextual, plaintiff points out that, on September 2, 2008, defendant board member James Melcher wrote an open letter to all Club members in which he stated that, since becoming Club manager in August 2007, plaintiff had "done a terrific job of reorganizing and modernizing our procedures across the board, while continuing our tradition of friendly and welcoming interaction with members, parents, and coaches." This praise directly contradicts Cross's finding that plaintiff had poor relations with members. The 20% total bonus she was awarded in late September 2008 also supports plaintiff's position. Coming as little as six weeks before Cross's study, the Melcher letter and the 20% bonus substantially undermine defendants' proffered reason for plaintiff's termination (*see Carlton v Mystic Transp., Inc.*, 202 F3d 129, 137 [2d Cir 2000], *cert denied* 530 US 1261 [2000]).

Documentary evidence also undercuts Cross's finding that plaintiff unnecessarily boosted expenses. Notably, Club records indicate that expenses for calendar year 2009, when Cross was in charge, increased by over $500,000 (from $1.2 million to $1.7 million) from calendar year 2008, when plaintiff was in charge until mid-November.

Plaintiff has thus met her burden of showing pretext by "respond[ing] with some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete" (*Bennett*, 92 AD3d at 45; *accord Sandiford v City of New York Dept. of Educ.*, 94 AD3d 593, 595 [1st Dept 2012], *affd* 22 NY3d 914 [2013]). Accordingly, a trial is warranted, and the motion court correctly denied defendants' summary judgment motion.

Because defendants have not shown that they are entitled to summary judgment under the *McDonnell Douglas* burden-shifting framework (*see McDonnell Douglas Corp. v Green*, 411 US 792 [1973]), we need not analyze plaintiff's claims under the "mixed motive" framework (*see Bennett*, 92 AD3d at 40-41). Concur—Acosta, Saxe, Gische and Kapnick, JJ.

Friedman, J.P., dissents in a memorandum as follows: I respectfully dissent because the record before us does not give rise even to a prima facie case that defendants violated the

New York City Human Rights Law by discriminating against plaintiff based on her age. In brief, plaintiff was hired at age 58, discharged at age 59 and replaced by a 53-year-old woman only six years younger than herself—a member of the same protected class to which plaintiff belongs—and there is no other evidence in the record from which it could reasonably be inferred that defendants' adverse actions against plaintiff were motivated by age-based discriminatory bias.[1] Plaintiff's vague testimony about stray remarks made by the 53-year-old woman who replaced her, to the effect that plaintiff looked "tired" or seemed to need "rest" on certain occasions, do not, by themselves, suffice to support an inference of discrimination, as Supreme Court, notwithstanding its denial of the summary judgment motion, recognized at certain points in its decision.[2] The lack of a prima facie case makes it unnecessary to reach the question of whether defendants' stated reasons for demoting and subsequently terminating plaintiff were pretexts.[3] Accordingly, defendants' motion for summary judgment dismissing the complaint should have been granted, and the order denying that motion should be reversed.

While this circumstance forms no part of the legal basis for my dissent, this lawsuit does illustrate the truth of the old adage, "No good deed goes unpunished." Defendants are plaintiff's former employer, Fencers Club, Inc. (the Club)—a not-for-profit

---

**1.** I note that the federal analogue of the New York City Human Rights Law for these purposes, the Age Discrimination in Employment Act of 1967, protects "individuals who are at least 40 years of age" (29 USC § 631 [a]).

**2.** In its decision, Supreme Court acknowledged that none of the statements on which plaintiff relies "implies that [she] was being treated differentially because of her age" and that such statements "are insufficient, standing alone, to support an inference of age discrimination" (40 Misc 3d 1233[A], 2013 NY Slip Op 51409[U], *3-4 [Sup Ct, NY County 2013]). Unfortunately, Supreme Court failed to recognize that, since nothing else in the record gives rise to an inference of age discrimination, defendants are entitled to summary judgment dismissing the action, regardless of any disputes about how well plaintiff performed her job.

**3.** While plaintiff naturally disagrees with defendants' account of the perceived deficiencies in her performance as a Club employee, disputes about the quality of plaintiff's performance are not legally relevant, given the lack of any basis for inferring that the Club demoted or fired plaintiff with discriminatory intent. In the absence of circumstances from which discriminatory intent can reasonably be inferred, an employer's adverse action against an employee is not actionable under the Human Rights Law, even if the fairness of the employer's appraisal of the value of the employee's services is subject to reasonable dispute. The Human Rights Law does not give courts a general mandate to review the business judgment of nondiscriminatory employment decisions. Contrary to the majority's statement, I make no implication that defendants' assertions about plaintiff's work performance are "established facts" rather than disputed allegations.

corporation dedicated to the promotion of the sport of fencing—and the volunteer officer of the Club who recommended plaintiff's hiring, James Melcher. It is undisputed that Melcher met plaintiff, then 58 years old, when she interviewed for a position at Melcher's firm in the summer of 2007. Although Melcher did not offer plaintiff a job at his firm, he told plaintiff that the Club, of which he was then chairman of the board, was searching for a new general manager and suggested that she apply for that position. In August 2007, the Club hired plaintiff as general manager at a salary of $60,000. In February 2008, at plaintiff's request, the Club gave her the title of executive director and broader responsibilities, including bringing in new members.

In November 2008, due to deficiencies in plaintiff's performance perceived by the Club's executive committee (which plaintiff disputes), the Club demoted her from executive director to office manager, but did not decrease her salary. Plaintiff's replacement as executive director (to whom she was to report) was Elizabeth Cross, a 53-year-old member of the Club's executive committee who had substantial business and fund-raising experience and considerable knowledge of fencing. Unfortunately, plaintiff and Cross proved unable to work together, and the Club terminated plaintiff's employment in December 2008. The Club did not hire anyone to replace plaintiff as office manager.

For a prima facie case of discrimination to exist (whether under the framework of *McDonnell Douglas Corp. v Green*, 411 US 792 [1973] or under the "mixed motive" framework recognized in *Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 40 [1st Dept 2011], *lv denied* 18 NY3d 811 [2012]), there must be evidence that "(1) [the plaintiff] is a member of a protected class; (2) she was qualified to hold the position; (3) she was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]).

It is undisputed that plaintiff satisfies the first three criteria for a prima facie case—she was 58 and 59 years old at the time of the relevant events; defendants had deemed her qualified for the position when they hired her less than a year and a half before she was terminated; and her demotion (notably, without a reduction in salary) and subsequent discharge plainly constitute adverse employment actions. Plaintiff fails, however, to satisfy the fourth criterion of the prima facie test, in that the

adverse employment actions against her simply did *not* "occur [ ] under circumstances giving rise to an inference of discrimination" (*Forrest,* 3 NY3d at 305). This is because (1) plaintiff's termination at age 59 occurred only about one year after she had been hired at age 58; and (2) plaintiff's replacement as executive director of the Club was the aforementioned 53-year-old Elizabeth Cross, only six years younger than plaintiff and a fellow member of the same protected class to which plaintiff belongs.[4] While these facts would not necessarily negate an inference of discriminatory intent that could be drawn from other evidence, the problem for plaintiff, and the flaw in the majority's analysis, is that, in this case, there is no evidence in the record from which such an inference could rationally be drawn.

The remarks by Cross, after she replaced plaintiff as executive director, about plaintiff looking "tired" or seeming to need "rest" do not suffice to support an inference that the Club discriminated against plaintiff based on her age (*see Ji Sun Jennifer Kim v Goldberg, Weprin, Finkel, Goldstein, LLP,* 120 AD3d 18, 26 [1st Dept 2014] [dismissing a hostile work environment claim where the plaintiff "cites only isolated remarks or incidents" that "a reasonable person would consider . . . nothing more than petty slights" (internal quotation marks omitted)]; *Melman v Montefiore Med. Ctr.,* 98 AD3d 107, 126 [1st Dept 2012] ["stray, marginally age-related remarks . . . , none of which concerned an employment decision," did not create an issue as to whether the defendant's reasons for its actions were pretextual]). Plaintiff's deposition testimony about these remarks was exceedingly vague; she claimed that Cross made remarks of this kind "frequently" but did not describe the context in which Cross made them. Cross, for her part, avers that, on two occasions when she and plaintiff were working very late, she remarked to plaintiff that she looked "tired" and should go home. So far as disclosed by the record, Cross made these remarks to plaintiff and no one else; there is no indication that Cross communicated the remarks to other members

---

4. I see no merit in plaintiff's assertion that she was replaced, not by the 53-year-old Cross, but by a woman in her twenties who assumed, upon plaintiff's termination, three tasks that plaintiff had performed (registering new members, processing dues payments, and ordering office supplies). The record establishes that the bulk of plaintiff's responsibilities passed to the new executive director upon plaintiff's demotion from that position to that of office manager. Again, when plaintiff was terminated a month after her demotion, the Club did not hire anyone to replace her as office manager.

of the Club's board who participated in the Club's employment decisions.[5]

Even when the evidence is viewed in the light most favorable to plaintiff, Cross's remarks about plaintiff looking "tired" simply do not give rise to a reasonable inference of discriminatory intent on the part of the Club.[6] Yet, given the lack of anything else from which to draw such an inference to support a prima facie case of age discrimination, plaintiff's case—and the majority's affirmance of the denial of defendants' summary judgment motion—rest entirely on these ostensibly innocuous and inoffensive remarks. In my view, Cross's remarks, even as described by plaintiff, simply cannot bear this weight.

To be sure, there are workplace remarks that give rise to an inference of discriminatory bias that is reasonable or even strong (see Sandiford v City of New York Dept. of Educ., 94 AD3d 593, 595 [1st Dept 2012] ["testimony regarding . . . repeated derogatory remarks regarding gays and lesbians was sufficient to raise a question of fact as to . . . unlawful discriminatory practices"], affd 22 NY3d 914 [2013]). It is outlandish, however, to place in the same category as such offensive comments a supervisor's asking an employee about her energy level during a late night at the office, particularly when the record is otherwise devoid of evidence to support an inference of discriminatory bias (cf. Weiss v JPMorgan Chase & Co., 332 Fed Appx 659, 664-665 [2d Cir 2009] [a stray remark could be viewed as indicative of age-related bias when "consider(ed) . . . in the context of the other evidence"]). It is simply fanciful for the majority to assert that such anodyne remarks "directly reflect age-based discriminatory bias" (emphasis added) and could reasonably be construed as "implying that plaintiff . . . was infirm." People of any age can become tired when working late, and asking an employee if she would like to go home to get some rest after a long day at the office is not, so far as I am aware, a tort. I am astonished that the majority allows an age

---

**5.** Since there is no evidence that Cross communicated the remarks to the Club's board, the record offers no support for the majority's assertion that the remarks "implicitly suggest[ed] that the board should view Cross herself, at 53, as a member of a younger age group than that in which she placed plaintiff" (emphasis added). The majority, taking the remarks as an indication of bias, simply speculates that Cross made comments of similar import to other members of the Board.

**6.** There is no basis for the majority's accusation that I "fail[ ] to abide" by the requirement that, on a summary judgment motion, the evidence be viewed in the light most favorable to the opponent of the motion. In some cases, the probative value of the evidence relied upon by the opponent of the motion is so slight that, even when viewed in the light most favorable to that party, that evidence fails to raise a triable issue. This is such a case.

discrimination case to go to trial when the record contains not a scrap of evidence besides these comments to support an inference of discriminatory intent.

Allowing an action for age discrimination as weak as this one to go to trial essentially turns the Human Rights Law into a right of action for any discharged or demoted employee within a protected class who feels that the employer undervalued his or her performance, whether or not any rational inference of invidious discrimination—as opposed to disagreements over the quality of the employee's performance—arises from the circumstances of the employer's action. Further, denying the employer summary judgment notwithstanding the absence of any rational basis for inferring discriminatory intent will have the perverse effect of discouraging employers from hiring individuals within classes protected under the Human Rights Law. In nonetheless affirming the denial of summary judgment in this matter, the majority's decision threatens to turn a court considering an employment discrimination case into "a super-personnel department that reexamines an entity's business decisions" (*Baldwin v Cablevision Sys. Corp.*, 65 AD3d 961, 966 [1st Dept 2009] [internal quotation marks omitted], *lv denied* 14 NY3d 701 [2010]). Because this is not the purpose of the Human Rights Law, I respectfully dissent.