In the Matter of RUSSELL REEVES, Respondent, *v.* SIMEON GOLAR, as Chairman of the New York City Housing Authority, et al., Appellants.

First Department, June 27, 1974.

*Edward L. Johnson* of counsel (*Edward W. Norton, General Counsel*), for appellants.

*Carl Holmes* of counsel (*Rutledge, Holmes, Mitchell, Kellam & Willis*, attorneys), for respondent.

LUPIANO, J.  This is an article 78 proceeding wherein petitioner seeks review of respondents' termination of his employment as a probationary patrolman of the New York City Housing Authority on the ground that this determination is arbitrary and capricious.  By letter dated June 27, 1972, subscribed by respondent Daniel J. Daly in his capacity as Chief of Housing Police, petitioner was informed of the termination of his services.  The ground for termination is delineated therein as "unsatisfactory service during your probationary period".  However, respondents in this proceeding admit the following: (1) petitioner was temporarily suspended from his employment on June 2, 1972, on the alleged ground that analysis of his urine had disclosed traces of quinine and morphine and that he was, accordingly, under suspicion as a user of narcotic drugs; (2) petitioner at all times declared that he has never unlawfully partaken of any narcotic drug; (3) shortly after the suspension, petitioner was given an informal hearing wherein, accompanied by his mother and counsel, petitioner attempted to explain the presence of traces of quinine and morphine as due to medications administered by his mother; (4) petitioner's counsel's requests that copies of the test reports which allegedly disclosed quinine and morphine be produced and that the housing police authorize a thorough medical examination of petitioner to resolve the issue, were refused.  On this record, therefore, it is patent that at no time and in no manner did respondents assert that petitioner's service during the probationary period was inadequate other than as the purported basis for termination set forth in the letter notifying petitioner of same.  Reason dictates and the search for truth warrants concluding that petitioner's termination, occurring as it did immediately after the hearing, was grounded on the only charge asserted at the hearing, to wit, suspected use of narcotic drugs.  Indeed, on this appeal respondents contend that the unexplained presence of narcotic drugs in petitioner's urine and his failure to refute the laboratory findings, justified petitioner's termination as an unsatisfactory employee.

Petitioner avers that shortly after his termination in July, 1972, he underwent four urine tests in the Harlem Hospital

Toxicology Laboratory. The results of these tests (given for the purpose of detecting the presence, *inter alia,* of opiates, barbiturates, amphetamines and methadone) were negative, except that two tests were positive in respect of quinine.

As a general principle, a probationary employee is not entitled to a hearing and may be dismissed without reason for removal (*Matter of Ramos v. Department of Mental Hygiene,* 34 A D 2d 925 [1st Dept., 1970]). However, where an issue of substantial nature is raised that the termination was not due to the failure to perform satisfactory service during the probationary period, but was due to causes unrelated to work performance, a hearing may be required to resolve such issue, because in this context, the dismissal may be arbitrary and capricious (*Matter of Ramos v. Department of Mental Hygiene, supra*). Of course, *demonstrated* narcotic addiction is a factor related to performance, but it is the very nature of that demonstration on the existent record which is suspect.

An additional ground exists for affording petitioner on this record an opportunity to rebut the suspicion of narcotic addiction. It may well be that the Fourteenth Amendment mandates such an opportunity for a hearing on the ground that petitioner might otherwise be deprived of an interest in " liberty " as guaranteed by said amendment. As noted by the United States Supreme Court, this term " without doubt  *  *  *  denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge  *  *  *  and generally to enjoy those privileges long recognized  *  *  *  as essential to the orderly pursuit of happiness by free men " (*Meyer v. Nebraska,* 262 U. S. 390, 399 [1923]). In this regard, that same court later declared: " For ' [w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' *Wisconsin v. Constantineau,* 400 U. S. 433, 437; *Wieman v. Updegraff,* 344 U. S. 183, 191; *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U. S. 123; *United States v. Lovett,* 328 U. S. 303, 316–317; *Peters v. Hobby,* 349 U. S. 331, 352 (DOUGLAS, J., concurring). See *Cafeteria Workers v. McElroy,* 367 U. S. 886, 898. In such a case, due process would accord an opportunity to refute the charge ". (*Board of Regents v. Roth,* 408 U. S. 564, 573 [1971]) ; see, also, discussion by FRIENDLY, Ch. J. in *Russell v. Hodges,* 470 F. 2d 212, 216–217 [1972].)

Petitioner herein was given an informal hearing, presumably as an act of grace. This being so, the nature of that hearing itself raises the query as to due process. Reason and justice mandate that petitioner be afforded a further hearing consonant with due process requirements.

The judgment of the Supreme Court, New York County (SCOTT, J.), entered on May 2, 1973, should be modified on the law, by reversing so much thereof as reinstates the petitioner as a patrolman; the matter should be remanded to the respondent New York City Housing Authority for a further hearing and medical investigation in accordance with the aforesaid, and as so modified, the judgment should be affirmed, without costs and without disbursements.

STEUER, J. (dissenting). For two reasons we dissent from the holding of the majority. It is not necessary to restate the facts. As the majority concedes, no hearing, and in fact no reason, need be given for the discharge of a probationary policeman in the Housing Authority. The reasons for the failure to provide for a hearing are obvious. The Authority is responsible for the performance of its police force. In an area so sensitive it is essential that there be discretion equal to that responsibility.

In this instance the petitioner was given an opportunity to explain. The explanation did not satisfy the Authority. If there had been a formal hearing it is undoubted that the medical reports would have constituted substantial evidence to warrant the Authority's conclusion and action. The petitioner's evidence on this application raises an apparent conflict of medical testimony which could not be the basis of a finding that the decision was arbitrary. Moreover, the evidence that the urine analysis at a later date was negative does not even show a conflict. It does not contradict the presence of a narcotic drug at the time the original specimens were taken.

The judgment of Special Term should be reversed and the petition dismissed.

KUPFERMAN, J. P., and MURPHY, J., concur with LUPIANO, J.; STEUER, J., dissents in an opinion in which LANE, J., concurs.

Judgment, Supreme Court, New York County, entered on May 2, 1973, modified, on the law, by reversing so much thereof as reinstates the petitioner as a patrolman, and the matter remanded to the respondent New York City Housing Authority for a further hearing and medical investigation in accordance

with the opinion of this court filed herein, and as so modified, the judgment is affirmed, without costs and without disbursements.