In the Matter of JASPER B. PERRY, Appellant, v THOMAS R. BLAIR, as Commissioner of Police of the Buffalo Police Department, et al., Respondents.

Fourth Department, November 6, 1975

*Flaherty & Shea (James P. Shea* of counsel), for appellant.

*Leslie Foschio, Corporation Counsel (James J. McLoughlin* of counsel), for respondents.

MOULE, J. The questions presented on this appeal concern whether a probationary civil service employee is entitled to a hearing prior to being discharged and, if so, the time within

which he must move to demand such a hearing if his employment is terminated without one.

The facts are largely undisputed. On June 19, 1971 petitioner, in response to an employment opportunity notice published by the City of Buffalo, participated in a competitive civil service examination for the position of community peace officer. The notice stated that under the rules of the Classified Civil Service of the City of Buffalo the position of community peace officer was a training position leading to appointment as a probationary patrolman with the city Police Department. It further provided that a successful candidate would serve as a community peace officer for a minimum period of one year after which time he would, subject to existing vacancies, automatically be appointed a probationary patrolman.

Petitioner was thereafter notified that he had passed the civil service examination and had otherwise qualified for appointment as a community peace officer. He was appointed to that position on December 16, 1971. On that date he also received a notice from the Police Department which conflicted with the terms of the employment opportunity notice, in that it stated that he would serve on probationary status for six months, until June 16, 1972.

Petitioner's one-year term of appointment as a community peace officer, under the terms of the employment opportunity notice, expired on December 16, 1972. It is unclear whether vacancies in the position of patrolman existed at that time. Petitioner claims in his brief that there were vacancies in the position of patrolman at that time but this is unsupported in the record. He apparently retained his community peace officer status, however, beyond his one-year anniversary date.

On April 2, 1973 petitioner was arrested and charged with the crimes of rape in the first degree and unlawful imprisonment. The incident out of which the charges grew involved the handcuffing and sexual molestation of a 13-year-old girl whom petitioner had hired as a baby sitter. A sworn statement from the victim is included in the record, as is an affidavit by Police Commissioner Thomas R. Blair to the effect that a police investigation immediately following the alleged crime disclosed that the victim had been handcuffed with the same equipment that had been issued to petitioner and that various articles of clothing and personal effects belonging to the victim were found in petitioner's apartment.

On April 10, 1973, eight days after his arrest, petitioner was

notified by mail that pursuant to paragraph 10 of rule 18 of the Rules of the Buffalo Municipal Civil Service Commission his employment as a community peace officer had been terminated because of "unsatisfactory conduct". Petitioner claims that thereafter he was told by Commissioner Blair, who was then a deputy commissioner, that should he be acquitted of the pending charges he would be reinstated to his position. This statement, however, was denied by the commissioner.

On January 15, 1974 petitioner was found not guilty by a jury of the charges placed against him. On January 25, 1974 he requested reinstatement to his position but his request was denied by Commissioner Blair. Petitioner then wrote the Municipal Civil Service Commission seeking reinstatement and an opportunity to appear for a hearing. This was denied on the basis that his reappointment had not been requested by the Police Commissioner.

Petitioner commenced this proceeding under CPLR article 78 on May 16, 1974, seeking annulment of the decision to remove him from his position on the ground that such decision was arbitrary. He demanded reinstatement as either a community peace officer or a patrolman with back pay to April 11, 1973 or, in the alternative, a determination that he was entitled to a hearing prior to his dismissal.

On April 1, 1975 Special Term, Supreme Court, Erie County, issued an order dismissing the petition. The court based its decision upon two grounds: first, that the proceeding was barred by the four-month Statute of Limitations as provided in CPLR 217, the statute having commenced running on the date of petitioner's dismissal and, second, that pursuant to paragraph 10 of rule 18 of the Rules of the Municipal Civil Service for the City of Buffalo, petitioner was still a probationary employee at the time of his dismissal and was, therefore, not entitled to a hearing.

On the question of whether petitioner was still a probationary employee at the time of his discharge, we think that this must be decided on the basis of paragraph 10 of rule 18 of the Rules of the Municipal Civil Service for the City of Buffalo. It provides: "Notwithstanding the foregoing provisions of this rule, a Community Peace Officer will be appointed for a probationary period until he completes at least one year of service as a Community Peace Officer and thereafter until a permanent vacancy occurs in the position of Patrolman, at which time he shall automatically become a probationary

Patrolman in said position without further written examination provided he passes a satisfactory medical examination. In computing the one year of service as a Community Peace officer, temporary and/or provisional service will be included provided the candidate has passed the examination for Community Peace Officer and is appointed to said position in accordance with Civil Service Law."

Petitioner as much as concedes that the foregoing provision is controlling over the six-month probationary notice that he received from the Police Department. He contends, however, that since vacancies existed in the position of patrolman on the date of his first anniversary of employment, December 16, 1972, he should have automatically become a patrolman on that date and, thus, he was not a probationary employee when discharged on April 11, 1973. Assuming *arguendo* that he should have been appointed a patrolman on December 16, 1972 he would, under the terms of paragraph 10 of rule 18 have become a probationary patrolman. In such a status he would face an additional probationary period of from 3 to 12 months (rule 18, par 1). Therefore, even had he been appointed a probationary patrolman on December 16, 1972, there is nothing in the record that shows he would have achieved permanent status at the time of his dismissal. Accordingly, since there is no showing that vacancies in the position of probationary patrolman existed on December 16, 1972, or that petitioner should have been appointed to such a vacancy over other candidates, or that if appointed he would have been certain to have achieved permanent status by April 11, 1973, petitioner was a probationary employee at the time of his discharge.

The next question is whether, on these facts, petitioner was entitled to a hearing prior to being discharged. The general rule is that whereas a permanent civil service employee must be given notice and afforded a hearing on specific charges prior to dismissal (Civil Service Law, § 75), no such hearing is required prior to dismissal of a probationer *(Matter of Ramos v Department of Mental Hygiene,* 34 AD2d 925; *Matter of Voll v Helbing,* 256 App Div 44; *Matter of Gribbin v Kennedy,* 7 Misc 2d 479). These principles apply in the case of a probationer when such dismissal is grounded upon the unsatisfactory performance of his duties. However, where dismissal is predicated upon considerations reaching beyond the scope of his job performance, and where such considerations affect his

good name, reputation, honor or integrity, due process requires that he be afforded an opportunity to refute whatever allegations are made against him *(Matter of Reeves v Golar,* 45 AD2d 163). In this case the basis for petitioner's dismissal reached beyond the scope of his public performance. The charges of misconduct affect his good name, reputation, honor and integrity. He is therefore entitled to a hearing.

Since petitioner was entitled to a hearing, the proper method of obtaining one was by a proceeding in the nature of mandamus. If he were not entitled to one, he would have to rely upon certiorari to obtain review of the decision to discharge him. CPLR 217 establishes a four-month Statute of Limitations for article 78 proceedings. In *Austin v Board of Higher Educ.* (5 NY2d 430) the Court of Appeals discussed the running of the Statute of Limitations in such matters at some length. It held that when the proceeding is brought in the nature of certiorari to review the exercise of discretion by a public body or official, the statute commences running from the date the decision made pursuant to such exercise becomes final. On the other hand, when the proceeding is brought in the nature of mandamus, to compel the performance of an act enjoined by law, the statute does not begin to run until demand and refusal.

If petitioner's remedy had been solely in the nature of certiorari, the four-month Statute of Limitations would have begun running against him from April 11, 1973, when the decision to terminate his employment was made. Since this proceeding was not commenced until May 16, 1974, it would, therefore, have been time-barred under CPLR 217. However, since petitioner's proper remedy was in the nature of mandamus, the Statute of Limitations did not begin to run until January 25, 1974, when demand for reinstatement was made. Therefore, his petition, served on May 16, 1974, was within the four months' period.

The date when the Statute of Limitations commenced running notwithstanding, petitioner's right to demand a hearing accrued on April 11, 1973, the date of his dismissal, and he did not make his demand until January 25, 1974, more than nine months later. "[D]elay on the part of one removed from office in demanding reinstatement, for which there is no excuse, constitutes laches which is a good defense" to an article 78 proceeding *(Austin v Board of Higher Educ., supra,*

p 442, citing *Matter of Peruzzin v Test,* 282 App Div 550). "[I]t is immaterial whether or not the delay caused any prejudice" *(Matter of Devens v Gokey,* 12 AD2d 135, 137, affd 10 NY2d 898; see *Matter of Central School Dist. No. 2 v New York State Teachers' Retirement System,* 27 AD2d 265, 268). "The sole test * * * is * * * whether, under the circumstances of the case, the delay in making the demand was unreasonably protracted" *(Matter of Central School Dist. No. 2 v New York State Teachers' Retirement System, supra,* p 268; *Austin, supra; Matter of Kleinman v Kaplan,* 20 AD2d 594; *Matter of Amsterdam City Hosp. v Hoffman,* 278 App Div 292).

Viewing the particular circumstances of the case now before us, we cannot conclude that petitioner's 9-month delay in asserting his right to a hearing was unreasonably protracted. During this period of time criminal charges arising out of the same incident that prompted his dismissal were pending in Supreme Court. Had he demanded and been given a hearing prior to being acquitted on the criminal charges, his defense may well have been prejudiced. Furthermore, his acquittal would certainly provide evidence for consideration on his behalf at the hearing.

We appreciate that the evidence necessary to sustain an administrative determination is far less than that required for criminal conviction and that petitioner's efforts to obtain reinstatement may ultimately prove unsuccessful. However, we think the law requires that petitioner be given an opportunity to be heard.

In view of the fact that the removal provisions of the civil service statute are not applicable to a probationer (48 NY Jur, Public Officers and Employees, § 375), there is no statutory requirement that petitioner be reinstated with back pay pending the hearing. Accordingly, the judgment should be reversed and the case remitted to respondent Commissioner of Police, Buffalo Police Department, for a hearing. We do not order reinstatement or back pay, leaving those matters for consideration pending the hearing outcome *(Matter of Reeves v Golar, supra).*

MARSH, P. J., CARDAMONE, SIMONS and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed with costs and case remitted to respondent Commissioner of Police, Buffalo Police De-

partment, for a hearing in accordance with opinion by MOULE, J.