◼ In the Matter of ANDREW MICIOTTA, Appellant, v JACQUELINE McMICKENS et al., Respondents.—Motion for reargument granted, and the order of this court entered herein on December 3, 1985 (115 AD2d 1016) is recalled and vacated, and a new order and memorandum decision substituted therefor.

Petitioner's motion for reargument is granted, the order of this court entered December 3, 1985, which affirmed the judgment of the Supreme Court, New York County (Martin Evans, J.), entered January 23, 1985, is vacated, and upon reargument the judgment dismissing petitioner's CPLR article 78 petition is reversed, on the law, without costs and without disbursements, and the petition is granted to the extent of remanding the matter for trial in accordance with this memorandum.

On January 17, 1983 petitioner was appointed a correction officer of the New York City Department of Correction for a probationary term of one year. On November 23, 1983 he took a compulsory medical examination which included a urine test for the presence of drugs. On December 2, 1983 he was suspended based upon a laboratory finding of cocaine in his

urine specimen, and on January 13, 1984 his services as a correction officer were terminated.

Petitioner brought a proceeding under CPLR article 78 seeking reinstatement or a hearing in which he intended to demonstrate that respondents' termination of his employment was arbitrary because it rested upon the results of a urine test that was improperly administered. In essence, petitioner claimed that he was directed by clinic personnel to place his urine specimen in an unmarked bottle, and that the bottle was left alongside unmarked bottles containing the urine specimens of other persons who were being tested. Petitioner asserted under oath that he had never used cocaine, and therefore the specimen that tested positive for cocaine could not possibly have been his, i.e., that a mislabeling of the specimens had taken place, and therefore an "official action [was] taken on the basis of erroneous factual premises". (8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7803.14, at 78-87.)

The Department submitted in opposition to the petition an affidavit from the director of the testing clinic setting forth the "meticulous" routine according to which urine tests are handled, and which would, assuming it was followed in this instance, foreclose the possibility of the error alleged by petitioner. In reply, petitioner submitted an affidavit from a correction officer who had been tested with petitioner and had observed the procedure that was followed, confirming petitioner's version of the handling of the specimens on this particular occasion.

We concluded upon our initial consideration of this matter that the Department of Correction was justified in giving dispositive weight to the specimen-handling routine of the testing facility, after taking into consideration the difficulty that would be encountered by the employee who actually administered the test in recalling how this particular specimen was handled, and the danger, if we determined that a trial was warranted in such circumstances, that the door might thus be opened to contrived and meritless claims in comparable situations. Upon reconsideration, although the issue remains to us a troublesome one, we are now persuaded that petitioner's submissions specifically setting forth under oath the procedures followed by the clinic on the particular date in question, when weighed against a description of the standard operating procedure employed by the clinic, are sufficient to raise a triable issue of fact which requires resolution under CPLR 7804 (h).

In *Matter of Reeves v Golar* (45 AD2d 163) we held that a probationary Housing Authority partrolman, who was discharged when found to have traces of quinine and morphine in a urine specimen, was entitled to a trial on his contention that he was not a user of narcotic drugs, and that the test results reflected his having taken medications administered by his mother. We set forth *(supra,* at p 165) the general rule governing a determination of such an issue in the following language which we find applicable to the matter now before us: "As a general principle, a probationary employee is not entitled to a hearing and may be dismissed without reason for removal *(Matter of Ramos* v. *Department of Mental Hygiene,* 34 A D 2 d 925 [1st Dept., 1970]). However, where an issue of substantial nature is raised that the termination was not due to the failure to perform satisfactory service during the probationary period, but was due to causes unrelated to work performance, a hearing may be required to resolve such issue, because in this context, the dismissal may be arbitrary and capricious *(Matter of Ramos* v. *Department of Mental Hygiene, supra).* Of course, *demonstrated* narcotic addiction is a factor related to performance, but it is the very nature of that demonstration on the existent record which is suspect."

The pleadings in this case give rise upon reconsideration to a disquieting feeling that an injustice may have occurred, particularly since petitioner has been summarily denied the opportunity to prove his contention at a trial in which his credibility, and that of the other officer who confirmed petitioner's version of the handling of the samples on the particular occasion, could be weighed against such evidence as might exist tending to establish that there was no mislabeling of petitioner's specimen. We observe that if the clinic had included in its routine a simple procedure whereby a person tested observes his specimen being labeled, and initials a form confirming the accurate labeling, that would have resolved this proceeding and would also foreclose any future claims of mislabeling. We cannot simply ignore that there is always a normal routine in place for avoiding mistakes in the area of medicine and diagnostic tests, but common experience continues to demonstrate that mistakes nevertheless occur most often because of human error. *(See, e.g., Berg v New York Socy.,* 286 App Div 783, 784, where an "admittedly qualified laboratory technician" made an error in designating plaintiff's blood factor.)

In light of the serious consequences resulting from the

imposition of mandatory urine testing, the stigma inherent in petitioner's being discharged upon a finding that he used an illegal drug, and the conflicting affidavits raising a factual issue regarding the chain of custody of petitioner's urine sample *(see, Amaro v City of New York,* 40 NY2d 30), petitioner should be given an opportunity to present whatever evidence he might have to prove the finding of drug use erroneous. Accordingly, this matter is remanded for a trial pursuant to CPLR 7804 (h) of the factual issue raised by the petition, to wit, that it was not petitioner's urine specimen that tested positive for cocaine. *(See generally,* 8 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 7804.10, 7803.10, 7803.14.) Concur —Kupferman, J. P., Sandler, Ross, Asch and Milonas, JJ.