OPINION OF THE COURT
Edward H. Lehner, J.
This is an application by defendants for an order directing the reinstatement of all provisional emergency medical service employees summarily terminated by plaintiffs, and for the rescission of all probationary period extensions imposed.
FACTS
On March 3, 1988 the undersigned issued a temporary restraining order which barred a strike, work stoppage or "sickout” by employees of plaintiff Health and Hospitals Corporation represented by the defendant union. Plaintiff asserts that on the next day approximately 50% of such employees scheduled to work failed to report. As a consequence, plaintiffs elected to immediately terminate all employees who had provisional status who were absent on that day, and to require all absent probationary employees to agree to a 60-day extension of their probationary period. Provisional employees were given the right to reapply for their positions after 60 days.
Thereafter, stories appeared in the media of employees who were severely ill on March 4 who were terminated, and it was reported that even a deceased employee received a notice of discharge. Although some employees who were ill on March 4 have been reinstated, it appears that the procedure to handle claims of workers who have alleged illness is haphazard and that no formal process has been established.
CONTENTIONS OF THE PARTIES
Defendants assert that (i) plaintiffs lack authority to discharge employees based on strike participation alone, (ii) the Taylor Law (Civil Service Law art 14) entitled employees to a hearing regarding any action taken by plaintiffs, and (iii) since affected employees have been stigmatized as law breakers, a "liberty interest” is affected and they are thus constitutionally entitled to a hearing to clear their names.
Plaintiffs contend that since provisional and probationary *378 employees are not protected by civil service status, plaintiffs had the absolute right to take the action they did, and that since there has been no public release of the names of the affected employees, there has been no publication that can result in a stigmatization, but that even if there were, "a Taylor Law violation is not the type of stigmatizing assertion that implicates a liberty interest.”
DISCUSSION
In the recent case of Matter of Preddice v Callarian (69 NY2d 812, 813-814 [1987]), where a jury found that a provisional employee was discharged in bad faith, the Court of Appeals declined reinstatement or the payment of back pay stating that "provisional employees have no expectation of tenure and rights attendant thereto except under the limited circumstances specified in Civil Service Law § 65 (4) * * * and therefore they may be terminated at any time without charges preferred, a statement of reasons given or a hearing held”. However, the court did indicate that "other remedies may be available to provisional employees terminated in violation of a constitutional provision or some statute”. The Appellate Division opinion in this case (114 AD2d 134, 136) indicates that the reason for this seemingly harsh result is that "reinstatement * * * is but an illusory solution” because of the nature of the status of provisional employees.
One of the changes effected when the Taylor Law was enacted in 1967 to replace the Condon-Wadlin Act was the elimination of the automatic termination of the public employment of any person participating in a strike against government. Such provision had been unworkable as a practical matter. In lieu of that punishment, the Taylor Law provides for a forfeiture of two days’ pay for every day on strike, and originally provided that any employee who struck would be on probation for one year. The latter provision was eliminated in 1978 (L 1978, ch 465).
However, although the Taylor Law does not differentiate between employees protected by civil service status on the one hand, and provisional and probationary employees on the other, there is nothing therein that would lead the court to believe that it grants to the latter any greater rights to continued public employment than would be possessed by them absent such law. Although the Taylor Law eliminated the automatic termination of employment for a strike against *379 a public employer, it did not prohibit government from dealing with its provisional employees in the manner provided by other provisions of law. Thus, in determining whether the discharged provisional employees have any remedy, it is necessary to look to other provisions of law.
In Board of Regents v Roth (408 US 564, 573 [1972]), it was stated that where " 'a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential’ ”, and that a like result would ensue if "in declining to re-employ the respondent, [it] imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.”
In summarizing Supreme Court cases on this issue, the Second Circuit concluded in Gentile v Wallen (562 F2d 193, 197 [1977]) that "to constitute deprivation of a liberty interest, the stigmatizing information must be both false * * * and made public * * * by the offending governmental entity”.
In Beitzell v Jeffrey (643 F2d 870, 879 [1st Cir 1981]) the court, in explaining the reasoning behind the foregoing principles, stated that "[t]he fact that the statements are made in the form of charges by the government tends to lend them authority and credibility so that they stigmatize and the fact that they are made in public makes interference with future employment opportunities likely.”
Courts in this State have in the following cases granted hearings to discharged, provisional or probationary employees who were stigmatized as a result of the nature of the charges causing their dismissal or nonappointment: Ranus v Blum (96 AD2d 1144 [4th Dept 1983] [mental instability]), Matter of Salvatore v Nasser (81 AD2d 1012 [4th Dept 1981] [dishonesty]), Matter of Horowitz v Roche (70 AD2d 854 [1st Dept 1979] [incompetence of only applicant to pass competitive examination]), Matter of Perry v Blair (49 AD2d 309 [4th Dept] [probationary patrolman charged with rape and sexual molestation]), Matter of Reeves v Golar (45 AD2d 163 [1st Dept 1974] [narcotic addiction]), Matter of Stearns v Gilchrist (84 Misc 2d 519 [Sup Ct, Orange County 1976] [psychologically unfit]), and Matter of Mengrone v New York City Off-Track Betting Corp. (83 Misc 2d 105 [Sup Ct, NY County 1974] [misconduct involving public funds]).
Although here the names of the discharged employees have not been publicly disseminated, it would seem that a discharge *380 for violation of the prohibitions of the Taylor Law does stigmatize, and that as a result of the enormous publicity given to the alleged sickout, there has been sufficient publication to find that a "liberty interest” has been affected.
In a note to his dissenting opinion in Matter of Sanford v Rockefeller (35 NY2d- 547, 568, n 2 [1974]), Judge Wachtler, discussing the consequences ensuing from a finding of a Taylor Law violation, stated: "In addition to the direct sanctions of the Taylor Law, the employees are stigmatized for having been convicted of participating in an illegal strike since the guilty determinations become a part of their personnel files and may adversely affect their civil service careers in the future * * * The United States Supreme Court has recognized the value of an individual’s good name and reputation and held that a person may not be deprived of it without notice and an opportunity to be heard”.
Although this note appears in a dissenting opinion, the issue is not discjussed nor ruled upon by the majority which held that no hearing is required prior to the imposition of Taylor Law penalties, and that so long as an employee was subsequently given the opportunity to contest the penalty, constitutional rights were not violated.
Thus, since constitutional rights are involved, plaintiffs are hereby directed to grant any discharged provisional employee or any employee whose probationary period was extended a hearing to determine whether such employee had a valid excuse for not being present at work on March 4, 1988. Any employee who seeks a hearing shall request it of the Health and Hospitals Corporation within 30 days from the date hereof. Such hearings shall be held in an expeditious manner by said plaintiff.
Although, as indicated in Matter of Preddice v Callanan (supra), the court cannot direct the reinstatement of any provisional employee found to have a valid reason for not being at work on March 4, it is expected that plaintiffs will give serious consideration to the immediate rehiring of any such person.
Even though the court is limited in fashioning relief for any provisional employee unjustly discharged, probationary employees have greater rights as any determination to dismiss an employee with such status is subject to being attacked as arbitrary and capricious. (Matter of Wilborn v Starr, 58 AD2d 785 [1st Dept 1977].) In that case the court found that the *381 discharge of certain employees followed "baseless judgments” concerning their work, and the lower court’s three-month extension of their probationary period was found to be "an improvident exercise of discretion”. (Supra, at 786.)
Thus, if any probationary employee is found to have had a valid reason for not being at work on March 4, the 60-day extension of his or her probationary period would be in bad faith and arbitrary and capricious, and is to be rescinded.
Any employee who disputes the findings made after a hearing held pursuant to the foregoing direction may, of course, contest the conclusion in a CPLR article 78 proceeding.
The cross motion to dismiss the counterclaims is denied with leave to renew as, subsequent to the submission of the motions, defendants have served an amended answer.