Matter of Lake v Town of Southold (2020 NY Slip Op 08064)





Matter of Lake v Town of Southold


2020 NY Slip Op 08064


Decided on December 30, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 30, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
PAUL WOOTEN, JJ.


2017-11383
 (Index No. 5898/16)

[*1]In the Matter of Garrett Lake, appellant,
v
Town of Southold, respondent.


Wickham, Bressler & Geasa, P.C., Mattituck, NY (Eric J. Bressler of counsel), for appellant.
Devitt Spellman Barrett, LLP, Smithtown, NY (John M. Denby of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review a determination of the Town of Southold dated May 19, 2016, which terminated the petitioner's probationary employment as a police officer, the petitioner appeals from a judgment of the Supreme Court, Suffolk County (William G. Ford, J.), entered August 30, 2017. The judgment, upon an order of the same court dated November 17, 2016, inter alia, denying that branch of the petitioner's motion which was to compel the disclosure of certain video recordings, and upon an order of the same court dated July 17, 2017, in effect, making a summary determination pursuant to CPLR 409(b), denied the petition and dismissed the proceeding.
ORDERED that the judgment is reversed, on the law, on the facts, and in the exercise of discretion, with costs, the petition is reinstated, that branch of the petitioner's motion which was to compel the disclosure of certain video recordings is granted to the extent that the Town of Southold is directed to disclose all video recordings that are referenced in its answer, the order dated November 17, 2016, is modified accordingly, the order dated July 17, 2017, is vacated, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith.
The petitioner, Garrett Lake, commenced this proceeding pursuant to CPLR article 78 to review a determination of the Town of Southold terminating his probationary employment as a police officer. In a verified petition, Lake alleged that he performed his duties as a law enforcement officer in an exemplary manner, as reflected by the numerous community policing awards that he had been nominated for during his 18-month probationary period. The petition alleged that Lake's employment was nevertheless terminated by the Town Board four days before the expiration of his probationary period, without explanation.
The petition alleged that Lake's employment was terminated in bad faith for reasons unrelated to his job performance. In particular, the petition alleged that Lake had been fired in retaliation for his refusal to give special or preferential treatment to two influential members of the community: a chief of a nearby fire department, and an individual with a close relationship to a local political party. The petition alleged that Lake's performance in arresting those two individuals—who were each involved in serious motor vehicle accidents and suspected of driving [*2]while intoxicated—had been lawful and proper in all respects, and that his employment had been terminated in bad faith. The petition noted that the termination of Lake's employment jeopardized the criminal cases that were pending against these two high-profile suspects. In addition, the petition alleged that the Town's ongoing refusal to provide any explanation for the termination of Lake's employment had prevented him from obtaining employment as a police officer outside of the Town, and "effectively ended his career in law enforcement."
The Town answered the petition and denied that Lake's employment had been terminated in bad faith. The Town asserted that Lake's employment was terminated in good faith based upon his failure to adequately perform his police duties. Specifically, the Town asserted that "complaints were made about [Lake] using questionable reasons to stop vehicles and thereafter carrying out searches of the vehicles without a sufficient reason to conduct the search." The Town asserted that these issues had been "confirmed" by the Town's Chief of Police, Martin Flatley, "who viewed hours of video of [Lake's] stops and arrest[s] and found many of them to be legally problematic."
In a verified reply, Lake disputed that any of his actions as a police officer had been improper or illegal. He contended that all of his stops and arrests had been based on probable cause, and that the Town's belated assertion that he had been fired due to poor performance was pretextual.
Lake also moved, inter alia, to compel the disclosure of the in-car video recordings that had been reviewed by Chief Flatley. The Town opposed that branch of Lake's motion, calling it "a fishing expedition." The Town argued that it was unnecessary to disclose these videos because Chief Flatley had reviewed them and "determined that the vehicular stops were not being properly made." The Town reiterated that its decision to terminate Lake's employment was proper because it was "extremely important for a police department to make sure its officers follow Constitutional mandates."
The Supreme Court directed the Town to produce a copy of the videotapes that Lake had requested for in camera review. Ultimately, after a hearing, in an order dated November 17, 2016, the court, among other things, denied that branch of Lake's motion which was to compel the disclosure of the video recordings. The court concluded that the videos were not "relevant."
In an order dated July 17, 2017, the Supreme Court, in effect, made a summary determination pursuant to CPLR 409(b), concluding that the record supported the Town's assertion that Lake's employment had been terminated due to poor performance, and that Lake failed to sustain his burden of raising a triable issue of fact as to whether his employment was terminated in bad faith. In a judgment entered August 30, 2017, the court denied the petition and dismissed the proceeding. We reverse.
A proceeding to challenge an administrative determination pursuant to CPLR article 78 is commenced with "a verified petition, which may be accompanied by affidavits or other written proof" (CPLR 7804[d]; see CPLR 402; cf. CPLR 105[u]). An adverse party responds to the allegations in a petition in "a verified answer, which must state pertinent and material facts showing the grounds of the respondent's [determination]" (CPLR 7804[d]; see CPLR 402). The petitioner is permitted to "reply to new matter in the answer" (CPLR 7804[d]; see CPLR 402).
At a hearing on notice served with the petition, the parties are required to furnish to the court all of the papers that they have served (see CPLR 409[a]; see generally Siegel & Connors, NY Prac § 556 [6th ed July 2020 Update]). Furthermore, "[t]he petitioner shall furnish all other papers not already in the possession of the court necessary to the consideration of the questions involved" (CPLR 409[a]). "Where such papers are in the possession of an adverse party, they shall be produced by such party" (CPLR 409[a]). The court may also "require the submission of additional proof" (CPLR 409[a]; cf. CPLR 408, 3101[a]).
The CPLR authorizes a court to make a summary determination once the required papers have been furnished to it (see CPLR 409[b]; see generally Siegel & Connors, NY Prac § 556). [*3]"The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised" (CPLR 409[b]; see e.g. Matter of Aryeh v St. John's Univ., 154 AD3d 747, 748). In this regard, upon searching the record, "[t]he court may make any orders permitted on a motion for summary judgment" (CPLR 409[b]). "If triable issues of fact are raised they shall be tried forthwith and the court shall make a final determination thereon" (CPLR 410; see CPLR 7804[h]; Matter of Kickertz v New York Univ., 25 NY3d 942, 944; see generally 3 Weinstein-Korn-Miller, NY Civ Prac: CPLR ¶ 409.03 [2020]).
As relevant here, a probationary employee may "be dismissed for almost any reason, or for no reason at all" (Matter of Venes v Community School Bd. of Dist. 26, 43 NY2d 520, 525; see Matter of Duncan v Kelly, 9 NY3d 1024, 1025). However, this broad discretion is not "'unlimited'" (Matter of Maynard v Monaghan, 284 App Div 280, 283). The employment of a probationary employee may not be terminated "in bad faith, for a constitutionally impermissible or an illegal purpose, or in violation of statutory or decisional law" (Matter of Lane v City of New York, 92 AD3d 786, 786; see Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y., 71 NY2d 763, 765; Matter of Miller v Ravitch, 60 NY2d 527, 531; Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown, 34 NY2d 318, 322-323).
In a proceeding to review a determination to terminate a probationary employee's employment, "[t]he burden of presenting legal and competent evidence to show a deprivation of petitioner's rights or bad faith or other arbitrary action . . . must be borne by petitioner" (Haberman v Codd, 48 AD2d 505, 508; see Matter of Mendez v New York City Dept. of Educ., 28 NY3d 993, 994; Matter of Jones v New York City Tr. Auth., 178 AD3d 826, 828). Where, upon searching the record, the parties' submissions permit the resolution of this issue as a matter of law, a summary determination is warranted (see CPLR 409[b]; Matter of Mendez v New York City Dept. of Educ., 28 NY3d at 994; Matter of Anonymous v Codd, 40 NY2d 860, 861; Matter of Hernandez v City of White Plains, 301 AD2d 523, 524). Where, however, the record presents triable issues of fact as to whether the employer was acting in good faith in terminating the probationary employee's employment, a trial must be held (see CPLR 410, 7804[h]; Matter of Miller v Ravitch, 60 NY2d at 533; Matter of Robinson v Riccio, 194 AD2d 424, 425).
Here, in responding to the allegations in the petition, the Town made the positive assertion that Lake's employment had been terminated due to his poor performance as a police officer. To substantiate this contention, the Town submitted, among other things, an affidavit of Chief Flatley.
In his affidavit, Chief Flatley acknowledged that he had given a fire department official special access to certain evidence in one of the high-profile cases cited in the petition, but denied that he had ever "heard any statements from anyone" criticizing Lake's arrest of the other high-profile suspect. This latter assertion conflicts with the affidavit of Lieutenant James A. Ginas of the Town's Police Department, which confirmed that one of the individuals identified in the petition had intervened during Lake's performance of his duties and had criticized Lake's administration of a field sobriety test at the scene directly to one of Lake's superior officers. The record reflects that the indictment in that high-profile case was later dismissed.
Chief Flatley acknowledged that he told Lake "that people were going to the Town Board with complaints about his arrests" but asserted that Lake's employment was terminated due to poor performance. Chief Flatley stated that, upon watching numerous "in-car" videos of Lake's traffic stops at various times during Lake's probationary period, he determined that "many of [Lake's] stops were problematic because there were questionable reasons for stopping drivers [and] . . . insufficient reasons for carrying out searches." Ultimately, after numerous efforts to correct Lake's allegedly illegal actions over a period of many months, Chief Flatley stated that he recommended that the Town terminate Lake's employment because "[he] could not tolerate having a Police Officer on the force who was willing to endanger [a] citizen's basic constitutional right to be free from illegal stops and illegal searches and seizures."
Notwithstanding these very serious allegations, Chief Flatley declined to set forth the relevant facts as to any of the stops or searches that he subsequently labeled illegal, and he did not otherwise explain how any of Lake's stops or searches violated any particular decisional law, statute, or regulation. Accordingly, Chief Flatley's conclusory assertion that Lake performed illegal stops and searches constituted a bare legal conclusion that was, without more, not entitled to any evidentiary weight in this procedural posture (see HSBC Bank USA N.A. v Nuteh 72 Realty Corp., 70 AD3d 998, 999; Gold Mech. Contrs. v Lloyds Bank P.L.C., 197 AD2d 384, 384; see also Feldman v Finkelstein & Partners, LLP, 131 AD3d 505, 506-507; Barbieri v Fishoff, 98 AD3d 703, 704; Brady v Bisogno & Meyerson, 32 AD3d 410, 410). Notably, the Town did not present any contemporaneous documents or other evidence to substantiate its claim that Lake had performed his duties in a substandard manner (cf. Matter of Cohen v Koehler, 82 NY2d 882, 884-885; Matter of Johnson v Katz, 68 NY2d 649, 650).
In any event, in a verified reply to the Town's "new" assertion that he was fired for poor performance (CPLR 7804[d]; see CPLR 402), Lake asserted that Chief Flatley had never advised him that his arrests were improper or illegal during the probationary period, but that Chief Flatley had told him that "the Town Board was unhappy about the arrest of the Fire Chief."
Lake noted that the Town had not produced any contemporaneous records to support its assertion that he had performed poorly as a police officer. Rather, the evidence in the record showed that he had been given at least nine tours of overtime duty, and had been honored at a regional awards ceremony and received a commendation for his performance as a law enforcement officer during his 18-month probationary term. Lake had been nominated for one of those awards by Chief Flatley himself. The only written evaluation of Lake's performance, which was signed and approved by Chief Flatley approximately two months before the termination of Lake's employment, reflected that Lake did not need improvement in any area, and that his overall performance was "above standards" (cf. Matter of Palmore v Board of Educ. of Hempstead Union Free Sch. Dist., 145 AD3d 1072, 1074; Matter of Muller v New York City Dept. of Educ., 142 AD3d 618, 620-621; Matter of York v McGuire, 99 AD2d 1023, 1024). Significantly, the written evaluation did not reference any of the grave constitutional concerns identified by Chief Flatley in his affidavit, despite the fact that Chief Flatley allegedly identified these issues almost six months before the evaluation was prepared. To the contrary, the evaluation specifically stated that Lake "[m]akes good arrests," and that he had "grasped the job well" and was "an asset to the department." On this record, Lake's evidentiary submissions were sufficient to raise a triable issue of fact as to whether his job performance was satisfactory and whether the Town's proffered explanation of poor performance was pretextual (see Matter of Higgins v La Paglia, 281 AD2d 679, 681; see also Ferrante v American Lung Assn., 90 NY2d 623, 627; Rollins v Fencers Club, Inc., 128 AD3d 401, 403; McGuinness v Concentric Health Care LLC, 116 AD3d 527, 528; cf. Basillote v Holsa, Inc., 34 AD3d 347, 347; see generally Carlton v Mystic Transp., Inc., 202 F3d 129, 137 [2d Cir]).
"[I]t is hardly a new proposition that '[r]esort to a pretextual explanation is, like flight from the scene of a crime, evidence indicating consciousness of guilt, which is, of course, evidence of illegal conduct'" (Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 42, quoting Sheridan v E.I. DuPont de Nemours & Co., 100 F3d 1061, 1069 [3rd Cir]; see Binder v Long Island Lighting Co., 57 F3d 193, 200 [2d Cir]). "Once there is some evidence that at least one of the reasons proffered by [the employer] is false, misleading, or incomplete, a host of determinations properly made only by a [factfinder] come into play, such as whether a false explanation constitutes evidence of consciousness of guilt [or] an attempt to cover up the alleged [bad-faith] conduct" (Bennett v Health Mgt. Sys., Inc., 92 AD3d at 42).
Since Lake submitted sufficient evidence to raise a triable issue of fact as to whether the reasons put forth by the Town were pretextual, the Town was not entitled to a summary determination on the petition (see CPLR 409[b]; Watson v Emblem Health Servs., 158 AD3d 179, 184-185; Delrio v City of New York, 91 AD3d 900, 902; see also 3 Weinstein-Korn-Miller, NY Civ Prac: CPLR ¶ 409.03). To the contrary, the record presented triable issues of fact as to whether Lake's employment was terminated in bad faith for reasons unrelated to his job performance (see Matter of Robinson v Riccio, 194 AD2d at 425; Matter of Miciotta v McMickens, 118 AD2d 489, [*4]491; Matter of Reeves v Golar, 45 AD2d 163, 165; Matter of Ramos v Department of Mental Hygiene of State of N.Y., 34 AD2d 925, 925; Matter of Maynard v Monaghan, 284 App Div at 283-284; Matter of Silverman v Taylor, 270 App Div 1040, 1040; cf. Matter of Cipco Boarding Co., Inc. v Town of Hempstead, 164 AD3d 1235, 1236). Under the these circumstances, the matter should be remitted to the Supreme Court, Suffolk County, for an immediate trial (see Matter of Weslowski v Vanderhoef, 98 AD3d 1123, 1131-1132).
We also agree with Lake's assertion that the Supreme Court should not have denied that branch of his motion which was to compel the disclosure of the video recordings that were reviewed by Chief Flatley. Chief Flatley averred that he had determined that Lake had conducted unlawful stops and searches based upon his review of those videos. Given the fact that those videos were affirmatively relied upon by the Town in its answer to show that Lake's employment was terminated due to his poor performance, the Town's present contention that those same videos are now irrelevant and unnecessary to the issues presented in this proceeding rings hollow. Inasmuch as those videos were relied upon by a party in the pleadings, they were "necessary to the consideration of the questions involved" in this proceeding (CPLR 409[a]). Under the circumstances, the court improvidently exercised its discretion in denying the subject branch of Lake's motion to the extent that he sought disclosure of the video recordings that are referenced in the Town's answer (see Matter of Georgetown Unsold Shares, LLC v Ledet, 130 AD3d 99, 106-107; Matter of Lonray, Inc. v Newhouse, 229 AD2d 440, 440-441; see also Matter of Shollenberger v Malara, 70 AD3d 705, 706; cf. Matter of City of Glen Cove Indus. Dev. Agency v Doxey, 79 AD3d 1038, 1038).
CHAMBERS, J.P., AUSTIN, MILLER and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court