Holloway v Tully Constr. Co. Inc. (2025 NY Slip Op 50739(U))

[*1]

Holloway v Tully Constr. Co. Inc.

2025 NY Slip Op 50739(U)

Decided on May 7, 2025

Supreme Court, New York County

Ramseur, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 7, 2025
Supreme Court, New York County

Saundra Holloway, Plaintiff,

against
Tully Construction Co. Inc., Defendant.

Index No. 157573/2021

Holloway: Davida Perry, Esq. of Schwartz Perry & Heller
Tully Construction: Roxanne Tashjian, Esq. of Cullen & Dykman LLP

Dakota D. Ramseur, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59 were read on this motion to/for JUDGMENT - SUMMARY.
In August 2021, plaintiff Saundra Holloway commenced this action against defendant Tully Construction Co. Inc. (hereinafter, "Tully Construction"), asserting causes of action for gender and racial discrimination, hostile work environment, and retaliation in violation of the New York City Human Rights Law. In this motion sequence (001), Tully moves for summary judgment on each claim pursuant to CPLR 3212. Plaintiff opposes the motion in its entirety. For the following reasons, the motion is granted in part.
BACKGROUND
In or around October 2018, plaintiff, an African American woman, started working for Tully Construction as a "flagger" on a construction project in Brooklyn, New York, but was soon transferred to the company's Coney Island Project. (NYSCEF doc. no. 22 at ¶ 6, Coppes affidavit; NYSCEF doc. no. 38 at ¶ 9-13; Holloway affidavit.) According to Joshua Coppes, Tully Construction's project superintendent, the Coney Island Project employed approximately 176 employees, six of whom were women, though only one typically worked at the project at a time. (NYSCEF doc. no. 21 at 19-22, Coppes dep. transcript.) Plaintiff alleges that the on-site restroom consisted of a single-use, unisex "porta potty"-style facility that she could not use since "it only contained a urinal and the men at the construction site left urine everywhere, smoked [*2]inside of it and generally created a disgusting and unsafe facility". (NYSCEF doc. no. 1 at ¶¶11-13; NYSCEF doc. no. 19 at 58-59, Holloway dep. transcript.) She testified that she raised her concerns on numerous occasions to Ray White, her union representative, who told her to "stop complaining or you will be laid off." (Id. at 57-58.) During her deposition, she conceded that she did not complain about the bathroom situation to Coppes or Jorge Costa (a project foreman and one of her supervisors) (Id. at 76-77); nor did she make any written complaints to Tully Construction or her union concerning the bathroom situation (id. at 77).
As an alternative, plaintiff located restrooms at a nearby car dealership, a community center, and a transit station, and would inform Costa when she would leave the job site to use them. (NYSCEF doc. no. 1 at ¶¶14-16.) Despite being allowed to use the off-site restroom for several months, Costa explained that the company would start docking pay for repeatedly leaving the site to use the restroom if it continued. (NYSCEF doc. no. 19 at 76.) While Tully Construction initially docked four hours of pay, plaintiff acknowledges that it reversed course and reinstated those hours. (See NYSCEF doc. no. 38 at ¶¶33-36; NYSCEF doc. no. 21 at 53.)
Thereafter, plaintiff avers that Tully Construction ordered and installed a separate portable restroom; however, her male co-workers "ripped the lock off and used it, so it was just as unusable as the others." (NYSCEF doc. no. 38 at ¶¶33-36.) Similarly, in or around March 2020, she avers that Tully Construction delivered a clean restroom to the job site. (NYSCEF doc. no. 1 at ¶49; NYSCEF doc. no. 38 at ¶7.) Yet, when she returned the following week, she discovered that someone had smeared feces on the lock and handle of the new facility. (Id. at ¶ 52.) Coppes' affidavit largely corroborates the order of events described above. According to him, in December 2019, he was made aware that plaintiff had requested a separate female-only facility, which Tully Construction ordered, intending it to be for her use only. (NYSCEF doc. no. 22 at ¶¶8,10; NYSCEF doc. no. 23, attached invoice for "standard temporary restroom".) The portable restroom was installed in or around March 2020 and had a sign reading "WOMEN" on the back. Further, Tully Construction ordered and installed a guard shed, or what is described in his deposition as a "changing shanty," for plaintiff to change into and out of her uniform. (NYSCEF doc. no. 24, invoice for guard shed; NYSCEF doc. no. 21 at 55-56.)
On or around December 11, 2019, plaintiff took a leave of absence under the Family Medical Leave Act to care for her elderly mother and was scheduled to return to work on February 16, 2020. In response to a text from plaintiff on February 13, 2020, Coppes initially texted back that "there was no work available at this time," but approximately 90 minutes later changed his response upon finding out from a Tully Construction employee in Payroll that she "had gone out on FMLA." (NYSCEF doc. no. 21 at 63-65.) Plaintiff alleges that Coppes' initial text is evidence of retaliation as he attempted to replace her with another woman of color who did not complain about the lack of a female restroom.
On March 30, 2020, plaintiff texted Coppes the following:
"Good morning, Josh. I tried calling you and no answer. Just to inform you that I left the job. I am going to the doctors to make sure that I am good. Little but like symptoms [sic] but just wanted to be on the safe side and not take any chances." (See NYSCEF doc. no. 41, text messages.)
Though the above message does not reference COVID-19, plaintiff testified that she spoke to site Safety Managers Ryan Chattergoon and Alex Panos, informing them that she was experiencing symptoms of COVID-19. (NYSCEF doc. no. 19 at 126.) For his part, Chattergoon avers that plaintiff approached him to tell him that she feared contracting the virus, but did not [*3]inform him that she was experiencing any symptoms and was not visibly exhibiting any symptoms. (NYSCEF doc. no. 30 at ¶¶5-6, Chattergoon affidavit.) Nonetheless, according to her, Panos explained that if she tested positive for COVID-19, she would have to quarantine for 14 days; whereas if she did not, she could come back the following week. Plaintiff returned to work on April 6, 2020, having missed four days. Plaintiff does not dispute that she did not contact Coppes or anyone else from Tully Construction during those four days. (See NYSCEF doc. no. 38 at ¶¶63-68 [revealing absence of allegations that she contacted Tully Construction from March 30 through April 6]; NYSCEF doc. no. 22 at ¶¶15,16.) When she returned to work on April 6, 2020, Coppes and Tully Construction terminated her employment.
Plaintiff's three causes of action—for gender discrimination, racial discrimination, and retaliation—are all brought under the New York City Human Rights Law ("NYCHRL").
DISCUSSION
Under CPLR 3212 (b), a proponent moving for a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, producing sufficient evidence to eliminate any material issues of fact from the case. (Brandy B. v Eden Cent. School Dist., 15 NY3d 297, 302 [2010]; Kesselman v. Lever House Rest., 29 AD3d 302 [1st Dept 2006].) Once a defendant establishes their entitlement, the burden shifts to the plaintiff to raise a triable issue of fact. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) Since summary judgment is an extreme remedy, the Court must draw all reasonable inferences in favor of the non-moving party. (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012].) Where there is doubt as to the existence of material facts or where different conclusions can reasonably be drawn from the evidence, summary judgment should be denied. (Santos v Temco Serv. Indus., 295 AD2d 218, 218-219 [1st Dept 2002].)
New York City Human Rights Law
The NYCHRL is codified in title 8 of the Administrative Code. (Admin. Code. §8-101 et. seq.) Administrative Code §8-107 provides that "it shall be an unlawful discriminatory practice: for an employer . . . because of the actual or perceived . . . race . . . [or] gender . . . of any person to discriminate against such person in compensation or in terms, conditions, or privileges of employment." (NY Admin. Code §8-107 [1].) To state a prima facie cause of action under NYCHRL, plaintiff must allege that (1) she is a member of a protected class; (2) that she was qualified for the position; (3) that she was treated differently or worse than other employees; and (4) the different treatment occurred under circumstances giving rise to an inference of discrimination. (Williams v New York City Housing Authority, 61 AD3d 62, 62 [1st Dept 2009] [since the NYCHRL is to be "construed liberally for the accomplishment of [its] uniquely broad and remedial purposes," plaintiffs are only required that they have been treated "less well" than other employees because of a protected status]; Harrington v City of New York, 157 AD3d 582, 584 [1st Dept 2018].)
In analyzing claims under the Human Rights Law, courts have two evidentiary frameworks available to them: the McDonnel-Douglas burden-shift approach and the mixed-motive approach. Under the McDonnell-Douglas framework, the court assesses (1) whether the plaintiff has alleged membership in a protected class and that an adverse action against them occurred under circumstances giving rise to an inference of discrimination; (2) if the plaintiff has done so, whether the defendant has proffered through competent evidence legitimate, independent, and non-discriminatory reasons that actually motivated the defendant's actions; and (3) if the defendant has rebutted the plaintiff's showing, whether they can show defendant's [*4]proffered reasons were false or pretextual. (See Bennett v Health Mgt. Sys. Inc., 92 AD3d 29, 35-35 [1st Dept 2011].) Under the mixed-motive approach, the court looks to whether discrimination was one of what may be many motivating factors for the defendant's conduct. (Watson v Emblem Health Servs., 158 AD3d 179 [1st Dept 2018] ["A plaintiff may prove her case if she 'proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor."])
First Cause of Action: Gender Discrimination
While plaintiff's first cause of action appears to allege discrimination under both a disparate treatment theory and a hostile work environment theory (see NYSCEF doc. no. 1 at ¶72), the First Department has found that the City Human Rights Law "speaks to unequal treatment and does not distinguish between sexual harassment and hostile work environment." (See Suri v Grey Global Group., Inc. 164 AD3d 108, 115 [1st Dept 2018]; Bond v New York City Health & Hosps. Corp., 215 AD3d 469, 470 [1st Dept 2023] ["the City HRL does not differentiate between sexual harassment and other forms of gender discrimination"]). Consequently, since Tully Construction does not dispute plaintiff's membership in a protected class or that she was qualified for her position within the company, the only dispute issue remaining is whether Tully Construction treated her "less well" under an inference of discrimination.
In James v Amtrack (2005 US Dist. LEXIS 5401 [SDNY 2005]), a plaintiff asserted a disparate impact claim under Title VII and the New York State Human Rights Law based upon Amtrak's facially neutral policy or practice of supplying unisex comfort facilities at one of its work sites. In upholding a jury verdict in favor of the plaintiff on this claim, the Southern District of New York held that said jury could have reasonably concluded that women employees would have been subject to disparate impacts—in the form of "an egregious lack of privacy," "potential disciplinary action for using alternate facilities", and "unsanitary conditions"—that did not apply to the same degree as male co-workers. (Id. at *14.) Though not binding authority, the Court finds its reasoning persuasive. Here, plaintiff may reasonably argue that whether she was treated differently from similarly situated male employees cannot be determined solely by acknowledging that all employees were required to use the same restroom facilities—that, instead, the difference in treatment requires assessing the relative burden a unisex facility places on a female versus male employee. (See Bond, 215 AD3d at 470 [noting that defendant bears the burden of showing that "no jury could find defendant liable for gender-based discrimination"].)
Tully Construction contends that the more persuasive authority is Dauer v Verizon Communs. Inc. (2009 U.S. Dist. LEXIS 5182 [SDNY 2009]). There, a plaintiff similarly complained of being forced to use a "dirty" unisex facility that was also used by her male co-workers. While the Southern District of New York ultimately dismissed the claim, it did so for various reasons that highlight why the case is unpersuasive. First, because the claim was brought pursuant to Title VII and the New York State Human Rights Law, the court only analyzed the claim under a hostile work environment theory, specifically finding that the plaintiff did not attempt to establish disparate treatment. As referenced above, after Dauer, the First Department has since emphasized that the City Human Rights Law does not draw this distinction between theories. Second, a hostile work environment requires the plaintiff to complain of conduct that was "objectively severe or pervasive" such that the reasonable person would find hostile or abusive—a standard that the City Human Rights Law eschews. (Williams, 61 AD3d at 75-76.) [*5]Thus, whether the plaintiff's claims in Dauer rose to the level of severe or pervasive is not material to whether Holloway was treated "less well" on the basis of her gender.
Tully Construction raises several additional arguments as to why her gender discrimination claim fails, each of which are equally unavailing. It contends that the lack of restroom access cannot be considered an adverse action, and, in any event, it provided her with a separate women's facility. However, as Williams makes clear, plaintiff need not allege an adverse action, merely that she was treated less well, which is addressed above. As to the separate facilities, Coppes attests that Tully Construction ordered them in or around December 2019 and installed them in March 2020, or at least several months after plaintiff avers she started using outside facilities. In addition, he admitted that Costa—to whom plaintiff directly reported to when seeking to use alternative facilities—had managerial and supervisory authority as a foreman, meaning, at the very least, there are questions of fact as to when and how Tully Construction responded to plaintiff's complaints. (NYSCEF doc. no. 21 at 39-40.)
Separately, in applying the McDonnell-Douglas approach, Tully Construction contends that it has established a legitimate, non-discriminatory reason to terminate her employment. While the Court certainly recognizes that her allegedly unexplained absences may be considered a legitimate ground for her termination, it also recognizes that plaintiff has submitted various proofs that, when considered in a light most favorable to her, plausibly suggests that this rationale was pretextual. For example, Coppes acknowledged that plaintiff's replacement during her FMLA leave did not complain about the state of the restrooms, which might provide a reason Tully Construction would prefer her, explain why Coppes initially responded to plaintiff's text that "there is no work available at this time," and give cover for her termination that occurred approximately one month after returning to work. (Rollins v Fencers Club, Inc., 128 AD3d 401, 403 [1st Dept 2015] [finding the plaintiff has met her burden of showing pretext by "responding with some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete"]; Matter of Lake v Town of Southold, 189 AD3d 1588, 1594 [2d Dept 2020] [finding evidentiary submissions were sufficient to raise a triable issue of fact as to whether the plaintiff's job performance was satisfactory and whether [the defendant's] proffered explanation of poor performance was pretextual].)
Second Cause of Action: Racial Discrimination
At the outset, plaintiff has not asserted a nexus between Tully Construction's failure to provide adequate restroom facilities and her race. Instead, this cause of action is solely premised on a single comment from Raul Romain, who stated, "That's what's wrong with black women. You're always complaining." (NYSCEF doc. no. 19 at 119.) Plaintiff concedes that Romain was not her supervisor and has not alleged that he had any authority to terminate her employment. (NYSCEF doc. no. 38 at ¶68 ["it is undisputed that Coppes made the decision to fire me"].) While said remark cannot be classified as a "stray remark" as in Melman v Montefiore (98 AD3d 107, 112-113 [1st Dept 2012]), nonetheless, plaintiff has not established that her termination occurred under an inference of racial discrimination. (Melendez v NYC Transit Auth., 202 AD3d 542, 542-543 [1st Dept 2022].)
Third Cause of Action: Retaliation
Under the NYCHRL, for a retaliation cause of action to survive a CPLR 3211 (a) (7) motion to dismiss, the plaintiff must allege that: (1) they engaged in protected activity, (2) the employer was aware of such activity, (3) the employer took an action that disadvantaged them in a manner reasonably likely to deter a person from engaging in said protected activity, and (4) a [*6]causal connection between the activity and the adverse action. (Harrington v City of New York, 157 AD3d 582, 684 [1st Dept 2018]; Cadet-Legros v. New York Univ. Hosp. Ctr., 135 AD3d 196, 206 [1st Dept 2015].) Here, Tully Construction contends that plaintiff's complaints about the restroom facilities were "generalized" and not specific enough to her gender to constitute protected activity. In the Court's view, however, it strains credulity to suggest that her complaints as to the unisex restroom's conditions—conditions that, as Costa knew, plaintiff avoided by using alternative, off-site facilities—could somehow be interpreted as a subjective feeling unconnected to her gender.
Tully Construction further maintains that it installed a female restroom in March 2020, thereby removing any causal connection between plaintiff's complaints and her termination. This argument—while perhaps reducing the degree to which a causal connection may be inferred—does not eliminate one altogether. Plaintiff has shown, at the very least, that (1) Coppes was reluctant to bring her back after her FMLA leave expired; (2) within one month of being back, Coppes cited her for "unexplained" absences that, in her testimony, the company sanctioned company policy, in fact, required; and (3), her replacement—despite the state of the facilities—did not complain. Under these circumstances, the Court finds issues of fact as to whether Tully Construction retaliated against her for her complaints.
Accordingly, for the foregoing reasons, it is hereby
ORDERED that defendant Tully Construction Co. Inc.'s motion for summary judgment pursuant to CPLR 3212 is granted solely as to plaintiff Saundra Holloway's second cause of action for race-based discrimination under the New York City Human Rights Law and otherwise denied; and it is further
ORDERED that counsel for defendant shall serve a copy of this order, along with notice of entry, on all parties within twenty (20) days of entry.
This constitutes the Decision and Order of the Court.
DATE 5/7/2025
DAKOTA D. RAMSEUR, J.S.C.